---

Ashley K. Ikeda (Weinberg, Roger & Rosenfeld), Honolulu; Harold L. Lichten and Shannon Liss–Riordan, pro hac vice (Pyle, Rome, Lichten, Ehrenberg & Liss–Riordan), for plaintiffs-appellants.

Wayne S. Yoshigai and Nathan B. Hong (Torkildson, Katz, Moore, Hetherington & Harris), Honolulu; Paul E. Wagner, pro hac vice (Shea Stokes Roberts & Wagner), for defendants-appellees.

MOON, C.J., NAKAYAMA, DUFFY, and RECKTENWALD, JJ.; with ACOBA, J., dissenting.

Opinion by RECKTENWALD, J.

Plaintiffs–Appellants (collectively "Employees") have been or currently are employed as banquet servers at the Defendants–Appellees Four Seasons Resort, Maui or Four Seasons Resort, Hualalai on the island of Hawaiʻi. Employees filed a class action complaint against Defendants–Appellees [1] (hereinafter collectively referred to as "Four Seasons") in the United States District Court for the District of Hawaiʻi (district court), and subsequently filed an Amended Complaint. Employees claimed, inter alia, that Four Seasons violated Hawaiʻi Revised Statutes (HRS) § 481B–14 [2] by retaining a portion of a mandatory "service charge" collected at banquets and other events and by failing to notify customers that it was doing so.

Four Seasons moved to dismiss the Amended Complaint, arguing, inter alia, that Employees do not have standing to assert their claims for monetary damages under HRS §§ 480–2(e) and 480–13, quoted *infra*, because they are not businesses, competitors, or consumers, and because they failed to adequately plead the effect of Four Seasons' alleged actions on competition and therefore did not sufficiently allege antitrust injury.

On June 2, 2009, the district court [3] certified the following question pursuant to Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 13 [4]:

1. Defendant–Appellee Four Seasons Resorts Limited operates the Four Seasons Resort, Maui and Four Seasons Resort, Hualalai, which are both owned by Defendant–Appellee MSD Capital.

2. HRS § 481B–14 (2008) provides:

**Hotel or restaurant service charge; disposition.** Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge di-

rectly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

3. The Honorable Helen Gillmor, United States District Judge, presided.

4. HRAP Rule 13(a) states in pertinent part as follows:

Where plaintiff banquet server employees allege that their employer violated the notice provision of H.R.S. § 481B–14 by not clearly disclosing to purchasers that a portion of a service charge was used to pay expenses other than wages and tips of employees, and where the plaintiff banquet server employees do not plead the existence of competition or an effect thereon, do the plaintiff banquet server employees have standing under H.R.S. § 480–2(e) to bring a claim for damages against their employer?

This court entered an order accepting this certified question on June 12, 2009.

For the reasons set forth herein, we answer the certified question as follows:

Employees are "any persons" within the meaning of HRS §§ 480–1 and 480–2(e), quoted *infra,* and are within the category of plaintiffs who have standing to bring a claim under HRS § 480–2(e) for a violation of HRS § 481B–14.

However, based on the allegations contained in Employees' Amended Complaint, Employees have not sufficiently alleged the "nature of the competition" to bring a claim for damages against Four Seasons under HRS §§ 480–2(e) and 480–13(a) for a violation of HRS § 481B–14.

## I. BACKGROUND

This factual background is based primarily upon the information certified to this court by the district court, as well as the allegations contained within Employees' Amended Complaint. *See TMJ Hawaii, Inc. v. Nippon Trust Bank,* 113 Hawai'i 373, 374, 153 P.3d 444, 445 (2007) (in answering a certified question, this court relied upon the information certified to the court by the district

court and the facts set forth in the plaintiff's amended complaint).

Employees have all worked as food and beverage servers for Four Seasons. Daryl Dean Davis, Mark Apana, Elizabeth Valdez Kyne, Earl Tanaka, and Thomas Perryman have worked at the Four Seasons Resort, Maui, and Deborah Scarfone has worked at the Four Seasons Resort, Hualalai on the Big Island.

The Amended Complaint, which sought money damages, alleged in relevant part [5]:

4. For banquets, events, meetings and in other instances, the defendants add a preset service charge to customers' bills for food and beverage provided at the hotels.

5. However, the defendants do not remit the total proceeds of the service charge as tip income to the employees who serve the food and beverages.

6. Instead, the defendants have a policy and practice of retaining for themselves a portion of these service charges (or using it to pay managers or other non-tipped employees who do not serve food and beverages).

7. The defendants do not disclose to the hotel's customers that the service charges are not remitted in full to the employees who serve the food and beverages.

8. For this reason, customers are misled into believing that the entire service charge imposed by the defendants is being distributed to the employees who served them food or beverage when, in fact, a smaller percentage is being remitted to the servers. As a result, customers who would otherwise be inclined to leave an additional gratuity for such servers frequently do not do so because they erroneously believe

---

When a federal district or appellate court certifies to the Hawai'i Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawai'i that is determinative of the cause and that there is no clear controlling precedent in the Hawai'i judicial decisions, the Hawai'i Supreme Court may answer the certified question by written opinion.

**5.** Employees' Amended Complaint also included Counts II–V, in which Employees' alleged that Four Seasons' conduct constituted intentional interference with contractual relations and/or advantageous relations, breach of implied contract, unjust enrichment, and unpaid wages pursuant to HRS §§ 388–6, 10 and 11.

that the servers are receiving the entire service charge imposed by the defendants.

. . .

## COUNT I

### (Hawaii Revised Statutes, Sections 481B–14, 481B–4, and 480–2 [6])

The action of the defendants as set forth above are in violation of Hawaii Revised Statutes Section 481B–14. Pursuant to Section 481B–4, such violation constitutes an unfair method of competition or unfair and deceptive act or practice within the meaning of Section 480–2. Section 480–2(e) permits an action based on such unfair methods of competition to be brought in the appropriate court, and a class action for such violation is permitted and authorized by Section 480–13 [7] and Rule 23 of the Federal Rules of Civil Procedure.

On January 30, 2009, Four Seasons moved to dismiss the Amended Complaint, arguing, inter alia, that Employees lacked standing under HRS § 480–2(e) to bring a claim for unfair methods of competition because they are not businesses, competitors, or consumers. Four Seasons also asserted that Employees failed to properly plead the nature of the competition.

The district court held a hearing on the motion to dismiss on March 24, 2009. Following oral argument, Judge Gillmor denied Four Seasons' motion to dismiss with leave to renew the motion following receipt of a ruling by this court with respect to the issue of standing of the Employees to bring the action. An order certifying the question was entered on June 2, 2009, and transmitted to this court the next day.

In addition to the briefs of both parties, several amici curiae also filed amicus briefs in this case as follows: (1) Gustavo Rossetto (hereinafter "Amicus Curiae Rossetto"); (2) Fairmont Hotels and Resorts (U.S.), Inc., Oaktree Capital Management, LP, Kuilima Resort Company, Turtle Bay Resort Company, Turtle Bay Resort Hotel, LLC, TBR Property LLC, and Benchmark Hospitality, Inc.; (3) Starwood Hotels & Resorts Worldwide, Inc.; and (4) HTH Corporation, Pacific Beach Hotel, and Pagoda Hotel.

6. HRS § 480–2 (2008) provides:

**Unfair competition, practices, declared unlawful.** (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
(b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.
(c) No showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary in any action brought under this section.
(d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.
(e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.
HRS § 481B–4 (2008) provides:
**Remedies.** Any person who violates this chapter shall be deemed to have engaged in an

unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480–2.

7. HRS § 480–13 (2008) provides:

**Suits by persons injured; amount of recovery, injunctions.** (a) Except as provided in subsections (b) and (c), any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter:
(1) May sue for damages sustained by the person, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit; provided that indirect purchasers injured by an illegal overcharge shall recover only compensatory damages, and reasonable attorney's fees together with the costs of suit in actions not brought under section 480–14(c); and
(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees together with the costs of suit.

. . .

## II. DISCUSSION

### A. Introduction

#### 1. Applicable Statutes

The Amended Complaint alleges that Four Seasons engaged in unfair methods of competition in violation of HRS § 481B-14 by withholding a portion of the service charge imposed on the sale of food and beverages at Four Seasons' resorts without advising customers that it was doing so. In their Opening Brief, Employees argue that this conduct "leads customers to believe that the waitstaff are receiving a tip of 18–22% of the food and beverage bill and deters customers from leaving any additional gratuity. . . ."

HRS § 481B-14 provides that:

Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

Pursuant to HRS § 481B-4, any person who violates chapter 481B, including § 481B-14, "shall be deemed to have engaged in an unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480-2." HRS § 480-2(a), which is virtually identical to section 5(a)(1) of the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45(a)(1),[8] declares that any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

Only consumers, the attorney general, or the director of the office of consumer protection are authorized to bring an action based on unfair or deceptive acts or practices. HRS § 480-2(d). Actions based on unfair methods of competition, on the other hand, are not so limited. Instead, HRS § 480-2(e) provides that *"[a]ny person may bring an action based on unfair methods of competition declared unlawful by this section."* (emphasis added).[9] Furthermore, HRS § 480-13(a), which is similar to section 4 of the Clayton Act, 15 U.S.C. § 15(a),[10] provides that "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by

---

**8.** Section 5(a)(1) of the FTCA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1). HRS § 480-2 "differs from section 5 of the FTCA in one essential aspect-enforcement." *Hawai'i Med. Ass'n v. Hawai'i Med. Serv. Ass'n*, 113 Hawai'i 77, 109, 148 P.3d 1179, 1211 (2006). HRS § 480-2(e) provides a private right of action with regard to unfair methods of competition claims, *id.,* while the Federal Trade Commission (FTC) has sole authority to enforce the FTCA, *see Robert's Hawai'i Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.,* 91 Hawai'i 224, 249, 982 P.2d 853, 878 (1999), *superseded by statute,* 2002 Haw. Sess. Laws Act 229, § 2 at 916–17, *as recognized in Hawai'i Med. Ass'n,* 113 Hawai'i at 107, 148 P.3d at 1209; *Star Markets, Ltd. v. Texaco, Inc.,* 945 F.Supp. 1344, 1346 (D.Hawai'i 1996).

**9.** The availability of a private right of action for unfair methods of competition in Hawai'i has changed over the last several years. In *Ai v. Frank Huff Agency, Ltd.,* 61 Haw. 607, 612, 607 P.2d 1304, 1308–09 (1980), *overruled by Robert's Hawai'i Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.,* 91 Hawai'i 224, 982 P.2d 853 (1999), and *Island Tobacco Co., Ltd. v. R.J. Reynolds Tobacco Co.,* 63 Haw. 289, 300–01, 627 P.2d 260, 268–69 (1981), *overruled by Robert's Hawai'i,* this court held that HRS § 480-2 afforded plaintiffs a private right of action for unfair methods of competition. In *Robert's Hawai'i,* this court overruled *Ai* and *Island Tobacco* to the extent that they held there existed such a private right and instead held that "there is no private claim for relief under HRS § 480-13 for unfair methods of competition in violation of HRS § 480-2." 91 Hawai'i at 252, 982 P.2d at 881. Thereafter, in 2002, the legislature amended HRS § 480-2 to add subsection (e) which makes clear there is such a private right. 2002 Haw. Sess. Laws Act 229, § 2 at 916–17. In *Hawai'i Med. Ass'n v. Hawai'i Med. Services Ass'n,* 113 Hawai'i 77, 107, 148 P.3d 1179, 1209 (2006), this court held that "[w]e do not believe the amendment 'overruled' *Robert's Hawai'i* ... but instead simply provided a new right that did not previously exist."

**10.** Section 4 of the Clayton Act, 15 U.S.C. § 15(a), provides:

**(a) Amount of recovery; prejudgment interest** Except as provided in subsection (b) of this section, any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ..., and shall recover threefold the damages by him sustained, and the cost of the suit, including a reasonable attorney's fee.

[chapter 480]: (1) [m]ay sue for damages ...; and (2) [m]ay bring proceedings to enjoin the unlawful practices[.]"

### 2. The Parties' Arguments

Employees allege that they have standing based on the plain meaning of the relevant statutes, the legislative history of HRS §§ 481B–14 and 480–2(e), and relevant Hawai'i and federal law. Specifically, Employees argue that the plain meaning of "any person" as found in HRS § 480–2(e), and as defined by HRS § 480–1, does not limit standing to businesses, competitors or consumers, and that even if this court determines that the phrase "any person" is ambiguous, the legislative history of HRS § 480–2(e) demonstrates that "[e]ach one of the plaintiffs here qualifies as 'any person' under the law." [11] Furthermore, Employees argue that the legislative history of HRS § 481B–14 "reflects a specific legislative intent to protect plaintiff food and beverage servers." Additionally, Employees argue that based on the plain meaning of HRS §§ 481B–14 and 481B–4, "a violation of § 481B–14 is 'deemed' by the language of the statute to be an unfair method of competition ... and no further proof that such a violation is an [unfair method of competition] is required." Finally, Employees argue that "[t]o the extent it is

applicable, federal antitrust law supports the conferral of standing on plaintiffs." [12]

Four Seasons counters that Employees "lack standing to bring their damages claims under HRS § 481B–14 as that statute is currently written and based on the allegations (or lack thereof) in [their] Amended Complaint." Specifically, Four Seasons argues that the legislative history of HRS § 481B–14 shows that it is not a wage and hour law intended to protect employees or create a labor standard,[13] but is instead "a consumer protection law designed to prevent businesses from engaging in unfair and/or anticompetitive behavior." Furthermore, Four Seasons argues that the broad "any person" language of HRS § 480–2(e) "should not be interpreted literally" and should instead be limited to businesses, competitors, or consumers [14] based on the legislative history of HRS § 480–2(e) and this court's holding in *Hawai'i Medical Association v. Hawai'i Medical Services Association*, 113 Hawai'i 77, 105, 148 P.3d 1179, 1212 (2006) (hereinafter "*HMA*"), as well as federal courts' interpretations of section 4 of the Clayton Act. Additionally, Four Seasons argues that both Hawai'i and federal case law require that Employees plead the nature of the competition, and that this requirement

11. Employees also argue that a limited interpretation of "any person" so as to exclude Employees "risks violation the equal protection clause of the Hawaii Constitution (Article I, Section 5) because it requires the court to deny the protection of Chapter 480 to employees, who may be [unfair methods of competition] victims similarly situated to other 'persons' receiving protection under the statute, without a reasonable basis." Because we conclude that Employees fall within the definition of "any person," we do not need to address this argument.

12. Employees also contend that Employees can enforce HRS § 481B–14 through HRS §§ 388–6, 10 and 11. However, this argument will not be addressed because it is beyond the scope of the certified question.

13. Four Seasons also argues that if HRS § 481B–14 "was intended to create a wage claim for employees, it is strikingly—if not unconstitutionally—vague. Among other things, it does not specify which employees should be paid the service charge as tip income[,]" and "allows the employer to pick any employee to receive the monies in any amount."

This argument, however, does not relate to the issue of whether or not employees have standing under HRS § 480–2(e) to bring a claim for damages for a violation of HRS § 481B–14, but instead relates to the merits of such a claim. Accordingly, we do not address it here.

14. At some points in its Answering Brief, Four Seasons also includes references to "other market participants," arguing that HRS § 480–2(e) is limited to businesses, competitors, consumers or "other market participants." At oral argument, counsel for Four Seasons argued that "businesses" may be broadly interpreted under this court's holding in *HMA* to include groups such as trade associations which are market participants, but did not further explain what other entities may be considered to be "market participants," *see* MP3: Oral Argument, Hawai'i Supreme Court, at 39:37–40:01 (Jan. 21, 2010), *available at* http://www.courts.state.hi.us/courts/oral_arguments/archive/oasc29862.html, other than indicating that employees are not, *id.* at 57:15–57:23.

must be satisfied even if a plaintiff alleges a per se violation of Hawai'i antitrust law.

As discussed below, Employees clearly qualify as "any person" within the plain meaning of HRS §§ 480–1 and 480–2(e), and the legislative history of HRS § 480–2(e) is consistent with this interpretation. Contrary to Four Seasons' assertions, standing to sue under HRS §§ 480–2(e) and 480–13(a) is not limited so as to preclude Employees from bringing suit. Moreover, both the plain language and legislative history of HRS § 481B–14 support the conclusion that Employees can bring claims for violations of HRS § 481B–14, as long as all other requirements of §§ 480–2(e) and 480–13(a) are met.

Additionally, Employees have sufficiently alleged a direct injury in fact to their "business or property" within the meaning of HRS § 480–13(a). However, Employees have failed to allege the "nature of the competition" in their Amended Complaint, which is required in order to bring a claim for damages based on Four Seasons' alleged unfair methods of competition.

**B. Employees are "persons" within the meaning of HRS §§ 480–1 and 480–2(e), and have standing to bring a claim under HRS § 480–2(e) for a violation of HRS § 481B–14**

**1. Employees are "persons" for purposes of HRS §§ 480–1 and 480–2(e)**

HRS § 480–2(e) provides that "any person" can sue for unfair methods of competition, while HRS § 480–1 defines "person" to include "individuals, corporations, firms, trusts, partnerships, limited partnerships, limited liability partnerships, limited liability limited partnerships, limited liability companies, and incorporated or unincorporated associations, . . . ." Therefore, under the plain language of HRS §§ 480–1 and 480–2(e), Employees constitute "any person" within the meaning of § 480–1 because they are "individuals." Since the language of §§ 480–1 and 480–2(e) is plain, clear, and unambiguous, the statute should be applied as written. *See, e.g., State v. Yamada*, 99 Hawai'i 542, 553, 57 P.3d 467, 478 (2002) ("[I]nasmuch as the statute's language is plain, clear, and unambiguous, our inquiry regarding its interpretation should be at an end."); *Cieri v. Leticia Query Realty, Inc.*, 80 Hawai'i 54, 67, 905 P.2d 29, 42 (1995) ("[w]here the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning.") (citation omitted).

However, even if the language of HRS §§ 480–2(e) and 480–1 is considered to be unclear or ambiguous and the legislative history of HRS § 480–2(e) is therefore examined, it confirms that "any person" is not limited to consumers, businesses, or competitors, and can in fact extend to Employees. HRS § 480–2(e) was enacted in 2002 in response to *Roberts Hawai'i School Bus, Inc. v. Laupahoehoe Transportation Co., Inc.*, 91 Hawai'i 224, 252, 982 P.2d 853, 881 (1999), *superseded by statute*, 2002 Haw. Sess. Laws Act 229, § 2 at 916–17, *as recognized in HMA*, 113 Hawai'i at 107, 148 P.3d at 1209, in which this court held that "there is no private claim for relief under HRS § 480–13 for unfair methods of competition in violation of HRS § 480–2." *See* H. Stand. Comm. Rep. No. 1118, in 2002 House Journal, at 1665 (noting that HRS § 480–2 was amended in response to a "1999 Supreme Court interpretation of section 480–2").

The "any person" language initially proposed for HRS § 480–2(e) never changed from the time the bill was first introduced as S.B. 1320 until it was signed into law as Act 229. *Compare* S.B. 1320, 21st Leg., Reg. Sess. (2002) *with* 2002 Haw. Sess. Laws Act 229, § 2 at 916–17. Most of the committee reports suggest that the "any person" language is to be construed broadly so as to encompass plaintiffs like Employees who are neither consumers, businesses nor competitors. *See* S. Stand. Comm. Rep. No. 448, in 2001 Senate Journal, at 1116–17 ("The purpose of [S.B. 1320] is to allow a *private citizen* to bring an action based on unfair methods of competition.") (emphasis added); S. Stand. Comm. Rep. No. 931, in 2001 Senate Journal, at 1295 ("The purpose of [S.B. 1320] is to amend the antitrust and unfair competition law to allow *any person* to bring a lawsuit for enforcement . . .") (emphasis added); H. Stand. Comm. Rep. No. 1118, in 2002 House Journal, at 1665 ("The purpose of

this bill is to permit *private actions* for unfair methods of competition.") (emphasis added). This interpretation is also consistent with the Senate floor discussion of S.B. No. 1320.[15]

■ Four Seasons argues that standing under HRS § 480–2(e) is limited to businesses, competitors or consumers, so as not to include Employees, based on this court's statement in *HMA* that "[b]y its plain terms, HRS § 480–2(e) authorizes *any person, i.e.,* businesses and individual consumers, to bring an action grounded upon unfair methods of competition[,]" 113 Hawai'i at 110, 148 P.3d at 1212 (emphasis in original), which is a reference to a report of the House Consumer Protection & Commerce and Judiciary & Hawaiian Affairs committees, indicating that "[t]his bill amends the law to clearly give *businesses and consumers* the right to enforce the law …[,]" H. Stand. Comm. Rep. No. 1118, in 2002 House Journal, at 1665 (emphasis added). This argument must be rejected, however, because when viewed in context, the reference to "businesses and individual consumers" in the committee report does not appear to have been an exclusive definition of who may bring suit.[16] Similarly, when viewed in context, the foregoing passage in *HMA* appears to have been intended to explain that persons or entities in addition to competitors may bring an action under HRS § 480–2(e) as long as they meet the additional standing requirements discussed below, in part II.C. *See HMA*, 113 Hawai'i at 110, 148 P.3d at 1212 ("To require that the plaintiffs in this case be competitors of HMSA would contravene the plain language

of subsection (e) and the intent of the legislature in amending the subject statute."). Additionally, a broad interpretation of "any person" is consistent with the principle that, as a remedial statute, chapter 480 must be construed liberally. *Cieri v. Leticia Query Realty, Inc.,* 80 Hawai'i 54, 68, 905 P.2d 29, 43 (1995) ("HRS chapter 480 is a remedial statute, which is 'to be construed liberally in order to accomplish the purpose for which [it was] enacted ….' ") (citation omitted).

Four Seasons also argues that federal judicial interpretations of the phrase "any person" in similar federal antitrust statutes also limit standing to businesses, consumers, or competitors. For example, Four Seasons relies on *Vinci v. Waste Management, Inc.,* 80 F.3d 1372 (9th Cir. 1996), for the proposition that the Ninth Circuit has limited standing to "only certain plaintiffs[.]" Four Seasons further notes that HRS § 480–3 states that "[t]his chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes, …."

A review of federal case law interpreting the phrase "any person" in section 4 of the Clayton Act, 15 U.S.C. § 15(a), which is analogous to HRS § 480–13(a), demonstrates that "any person" is *not* so limited. Instead, the Supreme Court has observed that "[t]he statute does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers …. The Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated." *Blue Shield of Virginia v. McCready,*

---

15. In support of the bill, Senator Matsunaga stated that the bill "amends the antitrust and unfair competition law to allow *any person* to bring a lawsuit for enforcement." 2002 Senate Journal, at 626 (statement of Sen. Matsunaga) (emphasis added). Senator Hogue, who opposed the bill, expressed similar views about its scope in a subsequent debate: "This bill, if enacted, would open the floodgates and allow *anybody* to file such a suit, no matter how frivolous." 2002 Senate Journal, at 724 (statement of Sen. Hogue) (emphasis added).

16. The committee report states that:
   Your Committees find that only the Attorney General may bring an action to enforce the antitrust, or unfair methods of competition law. This restriction was the result of a 1999

Supreme Court interpretation of section 480–2, Hawaii Revised Statutes. However, the Attorney General does not have the resources to investigate and litigate all price-fixing claims. This bill amends the law to clearly give businesses and consumers the right to enforce the law if the Attorney General declines to commence an action based on the claim.
H. Stand. Comm. Rep. No. 1118, in 2002 House Journal, at 1665.
   Thus, the report was focusing on the question of whether persons other than the Attorney General should be able to bring suit, rather than providing an exclusive list of which persons would be able to bring suit if the statute was amended.

457 U.S. 465, 472–485, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) (citation omitted) (plaintiff, who was an individual receiving health care coverage under a health plan purchased by her employer from the defendant (Blue Shield), had antitrust standing to sue under section 4 of the Clayton Act for Blue Shield's alleged failure to reimburse her for costs of treatment); *see also Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 311–15 (4th Cir.2007) (plaintiff was a software developer and had antitrust standing to sue a defendant manufacturer of computer operating system software even though the plaintiff was not a consumer or competitor and did not operate in the same market as the defendant); *Am. Ad Mgmt., Inc., v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1057 (9th Cir.1999) (holding that authorized sellers of advertising space, who purchased advertising space in the defendant's Yellow Pages telephone directory and then sold the space to customers, had antitrust standing even though not consumers or competitors); *Eichorn v. AT & T Corp.*, 248 F.3d 131, 141–42 (3d Cir.2001) (former employees of a subsidiary corporation who challenged a no-hire agreement of the parent corporation, alleging that the agreement was a conspiracy to restrain competition in the relevant labor market, had federal antitrust standing because the agreement precluded them from seeking re-employment from at least three divisions of the parent corporation within the competitive market).

The Ninth Circuit's holding in *Vinci* is not inconsistent with this analysis. In *Vinci*, the plaintiff was a former employee of a waste removal corporation who brought an action against his former employer, alleging that he was discharged for refusing to cooperate in the employer's anti-competitive scheme to drive a joint venturer out of business and engage in predatory price-fixing. 80 F.3d at 1373–74. Four Seasons relies on a passage from the Ninth Circuit's opinion which stated that "[a] plaintiff who is 'neither a competitor nor a consumer' in the relevant market does not suffer 'antitrust injury.'" *Id.* at 1376 (citation omitted). However, the court's subsequent discussion indicates that although "antitrust standing is *generally* limited to customers and competitors," employees can be afforded standing in certain circumstances. *Id.* (emphasis added).

The court in *Vinci* focused on the narrow issue of when a *terminated* employee has antitrust standing to challenge the loss of his or her job as an antitrust violation. For example, the court recognized that former employees who were "essential participants" in an anti-competitive scheme and whose termination is a "necessary means" to accomplish the scheme can obtain antitrust standing. *Id.* The court held that the plaintiff in *Vinci* did not fall within this category of former employees because he did not "allege any facts which suggest that he was essential to the alleged antitrust scheme or that his termination was necessary to accomplish the scheme." *Id.* at 1376–77; *cf. Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739, 745–46 (9th Cir.1984) (former employee who had alleged that he had been discharged after refusing to engage in the employer's scheme to fix prices in violation of federal antitrust law had antitrust standing because he was "an essential participant in the scheme to eliminate competition" in the industry and "his discharge was a necessary means to achieve the [employer's] illegal end"); *Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*, 843 F.Supp. 759, 765–72 (D.Me.1994) (former employees had federal antitrust standing to sue for alleged price discrimination by their employer since they were integral to the employer's anti-competitive scheme in that they either had to take an active role in implementing the scheme or face discharge).

*Vinci*, therefore, does not stand for the proposition that the Ninth Circuit has limited antitrust standing to only businesses, competitors, or consumers, to the exclusion of employees or other individuals. 80 F.3d at 1376–77; *see also Am. Ad Mgmt.*, 190 F.3d at 1057 (rejecting the defendant's claim that standing is limited to consumers and competitors, and recognizing that "[t]he Supreme Court has never imposed a 'consumer or competitor' test but has instead held the antitrust laws are not so limited"). Instead, *Vinci* indicates that antitrust standing may extend beyond businesses, competitors, or consumers and provides a specific framework

for analyzing the distinct issue of antitrust standing for a terminated employee.

In sum, based upon the plain language of the statute, Employees are "individuals" within the meaning of HRS § 480-1 and therefore qualify as "persons" under HRS §§ 480-2(e) and 480-13(a). Additionally, the legislative history of HRS § 480-2(e) does not evince a clear intent by the legislature to preclude employees from filing an unfair methods of competition claim, but rather indicates that the language is intended to be interpreted broadly. Finally, the federal case law would not require a contrary result. Therefore, Employees have standing to sue under HRS §§ 480-2(e) and 480-13(a) if they meet the additional requirements discussed below.

**2. The plain language and the legislative history of HRS § 481B-14 establish that Employees have standing to bring a claim under HRS § 480-2(e) for a violation of HRS § 481B-14**

■ Four Seasons argues that Employees lack standing to bring an unfair methods of competition claim for violation of HRS § 481B-14 because it "is a consumer protection law designed to prevent businesses from engaging in unfair and/or anticompetitive behavior." In making this argument, Four Seasons relies on the legislative history of HRS § 481B-14. Employees respond that the legislative history demonstrates that "one of the problems the statute is intended to remedy is that 'employees may not be receiving tips or gratuities' that customers intend to be distributed to the employees." Employees further contend that "nothing in the committee reports demonstrates a legislative intent to deny employees the ability to seek redress for violation of § 481B-14."

As a threshold matter, we observe that the plain language of HRS § 481B-14 is inconsistent with Four Seasons' argument that Employees cannot obtain standing to sue for a violation of HRS § 481B-14. HRS § 481B-14 provides that any hotel or restaurant that applies a service charge "shall distribute the service charge directly to its employees" or "clearly disclose to the purchaser" that it is withholding some of the service charge.

HRS § 481B-4 provides that "[a]ny person who violates [chapter 481B] shall be deemed to have engaged in an unfair method of competition and unfair or deceptive act or practice...." Nothing in either provision purports to preclude employees from seeking to enforce those provisions pursuant to HRS § 480-2(e). Since we have concluded that employees are "persons" who may bring an action under HRS § 480-2(e), *see* section II.B.1, *supra*, the plain language of these provisions is inconsistent with Four Seasons' position. *See Cieri*, 80 Hawai'i at 67, 905 P.2d at 42 ("[w]here the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning.") (citation omitted). In any event, as we discuss below, the legislative history of HRS § 481B-14 does not reflect an intent to preclude enforcement by employees.

In April of 2000, the legislature passed House Bill No. 2123 (H.B. No. 2123, H.D. 2), which was signed into law as Act 16, and codified within chapter 481B entitled "Unfair and Deceptive Practices" as HRS § 481B-14. Section 1 of Act 16 states that "[t]he legislature finds that Hawaii's hotel and restaurant employees may not be receiving tips or gratuities during the course of their employment from patrons because patrons believe their tips or gratuities are being included in the service charge and being passed on to the employees." 2000 Haw. Sess. Laws Act 16, § 1 at 21–22. It also states that:

> The purpose of this Act is to require hotels and restaurants that apply a service charge for food or beverage services, not distributed to employees as tip income, to advise customers that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

2000 Haw. Sess. Laws Act 16, § 1 at 22.

The legislative history of HRS § 481B-14 includes three forms of the bill (original, House Draft 1 (H.D. 1) and House Draft 2 (H.D. 2)), three committee reports, and Act 16 as signed into law by the Governor. H.B. 2123, H.D. 1, H.D. 2, 20th Leg., Reg. Sess. (2000); 2000 Haw. Sess. Laws Act 16, § 1 at 21–22. At all times, including when signed into law as Act 16, the bill was entitled

"Relating to Wages and Tips of Employees."[17] *Id.*

Initially introduced as H.B. 2123, the bill would have, inter alia, added a definition for "tips" in HRS § 387–1 that would include any service charges imposed by the employer, and amended HRS § 388–6 to prohibit employers from withholding tips from employees. *See* H.B. 2123, 20th Leg., Reg. Sess. (2000). According to the report of the House Committee on Labor & Public Employment, which was the first committee to consider the bill, it was originally intended to "strengthen Hawaii's wage and hour law to protect employees who receive or may receive tips or gratuities from having these amounts withheld or credited to their employers." H. Stand. Comm. Rep. No. 479–00, in 2000 House Journal, at 1155.

The Hotel Employees and Restaurant Employees, Local 5, union testified in support of the proposed bill. *Id.* The Department of Labor and Industrial Relations [DLIR] and the ILWU Local 142, however, expressed concerns.[18] Based on those concerns, the House Committee on Labor and Public Employment "amended the bill by deleting its contents and inserting a new section regarding unfair and deceptive business practices." *Id.* Thus, H.D. 1 reflects the Committee's decision to amend Chapter 481B (Unfair and Deceptive Trade Practices) rather than Chapter 387 (Wage and Hour Law). The new section, which eventually became § 481B–14, would "require[ ] that any hotel or restaurant applying a service charge to distribute it to the employees or clearly state that the service charge is being used to pay for costs or expenses other than wages for employees." *Id.*

H.D. 1 was then considered by the House Committee on Finance, which made only "technical, nonsubstantive amendments" to the bill, which, as amended, became H.D. 2. *See* H. Stand. Comm. Rep. No. 854–00, in 2000 House Journal, at 1298. The Committee's report, dated March 3, 2000, indicated that the bill's purpose "is to prevent unfair and deceptive business practices." *Id.*

The bill was subsequently considered by the Senate Committee on Commerce and Consumer Protection, which recommended adoption of the bill without further amendment. The Committee's April 3, 2000 report indicates that "[t]he purpose of this measure is to enhance consumer protection," and further noted that:

> Your Committee finds that it is generally understood that service charges applied to the sale of food and beverages by hotels and restaurants are levied in lieu of a voluntary gratuity, and are distributed to the employees providing the service. *Therefore, most consumers do not tip for services over and above the amounts they pay as a service charge.*
>
> Your Committee further finds that, contrary to the above understanding, *moneys collected as service charges are not always distributed to the employees* as gratuities and are sometimes used to pay the employer's administrative costs. *Therefore, the employee does not receive the money intended as a gratuity by the customer, and the customer is misled into believing that the employee has been rewarded for providing good service.*

---

**17.** Employees argue that "[t]he title to the Act is pivotal in dismantling Defendants' claim that the law was not meant to benefit employees because the Hawaii Constitution provides at Article III, Section 14 that: 'No law shall be passed except by bill. Each law shall embrace but one subject, which shall be expressed in its title.' " However, although we believe the title is instructive in that it appears to reflect the legislature's concern that employees may not always be receiving the service charges imposed by their employers, we do not believe it is dispositive of the issue of whether the legislature intended to afford Employees standing to sue for HRS § 481B–14 violations.

**18.** Specifically, the Committee Report notes that:

> The [DLIR] expressed concerns that the bill, as drafted, would delete the tip credit in its entirety thereby disallowing employers from taking any offset from the employees' wages. DLIR testified that since the current rules concerning tips and gratuities are in line with federal regulations, changing the definitions would cause a lot of confusion for both employers and employees.

H. Stand. Comm. Rep. No. 479–00, in 2000 House Journal, at 1155. The ILWU Local 142 also expressed concerns that "changing the definition of tips would cause much confusion[.]" *Id.*

S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1286–87 (emphasis added).

The report went on to state that "[t]his measure is intended to prevent consumers from being misled about the application of moneys they pay as service charges. . . ." *Id.*

In sum, the legislative history of H.B. No. 2123 indicates that the legislature was concerned that when a hotel or restaurant withholds a service charge without disclosing to consumers that it is doing so, both employees and consumers can be negatively impacted. The legislature chose to address that concern by requiring disclosure and by authorizing enforcement of that requirement under HRS chapter 480. There is no clear indication in the legislative history that the legislature intended to limit enforcement to consumers, businesses, or competitors and to preclude enforcement by employees. Therefore, the legislative history of HRS § 481B–14 is consistent with the conclusion that Employees have standing to sue as "persons" under HRS § 480–2(e) for a violation of HRS § 481B–14 if they meet the additional requirements discussed below.

## C. Employees have not sufficiently alleged the "nature of the competition," which is required to bring a claim for unfair methods of competition under HRS §§ 480–2(e) and 480–13(a)

In order to state a cause of action pursuant to HRS § 480–2(e) and recover money damages, Employees must first satisfy the requirements of HRS § 480–13. *Flores v. Rawlings Co., LLC,* 117 Hawai'i 153, 162, 177 P.3d 341, 350 (2008) ("In order for [the defendant's] failure to register [as a collection agency as required by HRS § 443B–3] to be actionable by private litigants [pursuant to HRS § 480–2], the threshold requirements of HRS § 480–13 must be satisfied."). HRS § 480–13(a) provides that, with limited exceptions, "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by [chapter 480]: (1) [m]ay sue for damages

. . .; and (2) [m]ay bring proceedings to enjoin the unlawful practices[.]"

When analyzing whether or not Employees have sufficiently alleged an injury to their "business or property," this court views Employees' Amended Complaint "in a light most favorable to [Employees] in order to determine whether the allegations contained therein could warrant relief. . . ." *In re Estate of Rogers,* 103 Hawai'i 275, 280, 81 P.3d 1190, 1195 (2003); *see* Hawai'i Rules of Civil Procedure Rule 12(b)(6).

In *HMA,* this court considered what a plaintiff must allege in order to bring an action for unfair methods of competition under HRS § 480–2(e). Specifically, this court addressed, inter alia, whether the Hawai'i Medical Association (HMA) sufficiently alleged injury to itself under HRS § 480–13(a) as a result of the Hawai'i Medical Services Association's (HMSA) alleged unfair methods of competition. *HMA,* 113 Hawai'i at 107–115, 148 P.3d at 1209–1217. HMA alleged that HMSA deprived over 1,600 HMA physicians of reimbursement for services provided by HMA physicians to HMSA plan members. *Id.* at 83–84, 148 P.3d at 1185–86. These HMA physicians had become "participating physician[s]" in HMSA's network by entering into a "Participating Physician Agreement" (called a "PAR agreement") with HMSA "to provide medically necessary healthcare services to HMSA's plan members in exchange for HMSA's payments at specified rates." *Id.* at 81, 148 P.3d at 1183.

HMA, on its own behalf and on behalf of participating physicians in HMSA's network, brought suit against HMSA for violation of HRS § 480–2, and tortious interference with prospective economic advantage.[19] *Id.* at 81, 148 P.3d at 1183. HMA alleged that HMSA engaged in "an unfair and deceptive scheme to avoid making timely and complete payments owed to its physician members" after the HMA physicians had rendered medical care to HMSA members pursuant to their PAR agreements. *Id.* at 84, 148 P.3d at 1186. HMA alleged that this "wrongful con-

---

**19.** Individual physicians also sued HMSA on similar grounds and the cases were consolidated on appeal. *HMA,* 113 Hawai'i at 81, 148 P.3d at 1183. However, because this court's discussion regarding the requirements to sue under HRS §§ 480–2 and 480–13 arose in the context of the HMA suit, we focus here solely on the issues pertaining to that suit.

duct (1) constituted unfair methods of competition and (2) delayed, impeded, denied or reduced reimbursement owed to HMA's physician members. HMA further alleged that HMSA's wrongful conduct ... resulted in direct and substantial harm to HMA and its members." *Id.* at 81, 148 P.3d at 1183.

HMSA filed a motion for judgment on the pleadings, arguing that HMA's claims should be dismissed because HMA, inter alia, lacked standing to bring suit on its own behalf. *Id.* at 85, 148 P.3d at 1187. Moreover, in its reply to HMA's opposition to the motion, HMSA argued that HMA's claim under HRS chapter 480 failed because HMA had not pled any direct injury to its "business or property." *Id.* at 86, 148 P.3d at 1188. The circuit court granted HMSA's motion for judgment on the pleadings and HMA appealed. *Id.* at 87, 148 P.3d at 1189.

On appeal, this court considered whether HMA sufficiently alleged injury to itself with respect to its post-June 28, 2002 [20] unfair methods of competition claims under HRS § 480–2. *Id.* at 107–15, 148 P.3d at 1209–17. This court acknowledged the three elements essential to recovery under HRS § 480–13: (1) a violation of HRS chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages.[21] *Id.* at 114, 148 P.3d at 1216 (citing *Ai*, 61 Haw. at 617, 607 P.2d at 1311); *see also Roberts Hawai'i School Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 91 Hawai'i 224, 254 n. 30, 982 P.2d 853, 883 n. 30

---

**20.** HRS § 480–2(e) became effective on June 28, 2002. In *HMA*, this court held that § 2(e) cannot be applied retroactively because "[n]either the language of the statute itself nor the legislative history of the amendment give any expressed indication that the amendment should be applied retroactively." *HMA*, 113 Hawai'i at 107, 148 P.3d at 1209.

**21.** A fourth element—"a showing that the action is in the public interest or that the defendant is a merchant"—used to be required, but was eliminated by the 1987 amendment to HRS §§ 480–2 and –13. *See HMA*, 113 Hawai'i at 114 n. 31, 148 P.3d at 1216 n. 31 (citing S. Conf. Comm. Rep. No. 105, in 1987 Senate Journal, at 872).

**22.** The majority opinion further stated that "notwithstanding ... our holding that the plaintiffs need not be 'competitors' of, or 'in competition' with, HMSA, the question remains whether the nature of the competition must be sufficiently

---

(1999), *superseded by statute*, 2002 Haw. Sess. Laws Act 229, § 2 at 916–17, *as recognized in HMA*, 113 Hawai'i at 107, 148 P.3d at 1209 ("[W]hile proof of a violation of chapter 480 is an essential element of an action under HRS § 480–13, the mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant unless they cause [some] private damage.") (citation omitted).

This court, according to the majority opinion, first determined that HMA need not be a "competitor[ ]" of or "in competition" with HMSA in order to have standing under HRS § 480–13(a).[22] *Id.* at 110, 148 P.3d at 1212. This court also determined that a plaintiff "may bring claims of unfair methods of competition based on conduct that would also support claims of unfair or deceptive acts or practices." *Id.* at 111, 148 P.3d at 1213. In doing so, however, "*the nature of the competition [must be] sufficiently alleged in the complaint.*" *Id.* at 113, 148 P.3d at 1215 (emphasis added). This court recognized that otherwise, "the distinction between claims of unfair or deceptive *acts or practices* and claims of unfair *methods of competition* that are based upon such acts or practices would be lost where both claims are based on unfair and deceptive acts or practices." *Id.* at 111–12, 148 P.3d at 1213–14 (emphasis in original). This court held that HMA sufficiently alleged an unfair methods of competition claim based on conduct that would also

---

alleged. Contrary to the dissent, we conclude that it does...." *Id.* at 111, 148 P.3d at 1213. Justice Acoba and Justice Nakayama, who concurred in the result, nevertheless characterized the majority's holding as requiring that plaintiffs be in competition with defendants and dissented on those grounds. *Id.* at 119, 148 P.3d at 1221 (Acoba, J. and Nakayama, J., dissenting) ("it is unnecessary to allege, as the majority indicates, that HMSA and all the plaintiffs are in competition with each other for the same 'customers.'"). However, the dissent agreed that something more than an unfair or deceptive act or practice must be alleged in order to bring a claim for unfair methods of competition. *Id.* ("In my view it is sufficient that 'unfair methods of competition' adversely impact the plaintiffs and allegations in that respect are made, beyond any allegations of unfair and deceptive acts or practices.").

support a claim of unfair or deceptive acts or practices [23] because it sufficiently alleged the nature of the competition in its complaint.[24] *Id.* at 112–13, 148 P.3d at 1214–15.

As to the injury in fact requirement, this court concluded that HMA established that it had been injured in its "business or property" by alleging a "diminishment of financial resources" as a result of HMSA's actions. *Id.* at 114, 148 P.3d at 1216. This court quoted *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 607 P.2d 1304 (1980), for the proposition that "it is unnecessary for plaintiffs to allege commercial or competitive injury[;] it is sufficient that plaintiffs allege that injury occurred to personal property through a payment of money wrongfully induced." [25] *Id.* at

114, 148 P.3d at 1216 (quoting *Ai*, 61 Haw. at 614, 607 P.2d at 1310) (internal quotation and bracketed text omitted; brackets in original). Therefore, this court held that "HMA need only allege that, by reason of an antitrust violation, it has been injured in its 'business or property.'" *Id.* HMA clearly alleged a direct injury to its business where "HMA was required to divert substantial resources and time to deal with its members' problems created by HMSA's conduct—resources that otherwise would go to support its principal mission in service of its members." *Id.* (internal quotation marks omitted).

As discussed below, although Employees have sufficiently alleged a direct injury in fact to their "business or property," Employ-

---

**23.** This court specifically stated that

HMSA facilitates access to the dispensing of medical services, and the plaintiffs provide medical services directly. Thus, in our view, HMSA and the plaintiffs share the same goal or mission, *i.e.*, ensuring that medical services are accessible to their "customers." Their success in meeting the common goal—and, in turn, ensuring the profitability of their respective businesses—is dependent upon their ability to effectively provide medical services to their customers, *i.e.*, the patients. However, if HMSA engages in acts or practices that impede or interfere with physicians' ability to provide effective healthcare services to their patients and/or create incentives for patients to look elsewhere for medical services-that is, to other participating physicians who may be reluctant to challenge HMSA or to non-participating physicians-such acts or practices can, if proven, constitute unfair methods of competition, notwithstanding the fact that the same conduct could also support a claim of unfair or deceptive acts or practices.

*HMA*, 113 Hawai'i at 112–13, 148 P.3d at 1214–15.

**24.** This court held that HMA sufficiently alleged the "nature of the competition" by, for example, alleging in its complaint that:

11. . . . *[HMSA's] conduct has adversely impacted, and continues to adversely impact, members of [HMSA's] plans* by, among other things: (a) imposing financial hardships on, and in some cases threatening the continued viability of, the medical practices run by [the plaintiffs]; (b) threatening the continuity of care provided to patients by [the plaintiffs], as required by sound medical judgment; (c) requiring [the plaintiffs] to expend considerable resources seeking reimbursement that could otherwise be available to provide enhanced healthcare services to [HMSA's] plan members; (d) making it more costly and difficult for [the plaintiffs] to maintain and enhance the availability and

quality of care that all patients receive; and (e) increasing the costs of rendering healthcare services in Hawaii as a result of the additional costs incurred and considerable effort expended by HMA members in seeking reimbursement from HMSA for services rendered. . . .

. . .

26. *HMSA dominates the enrollee market in Hawaii with over 65% of Hawaii's population enrolled in one of HMSA's plans. In this regard, HMSA is the largest provider of fee-for-service insurance in the State with more than 90% of the market and is the second largest HMO provider in the State. Similarly, HMSA dominates the physician market, with approximately 90% of Hawaii's physicians participating in HMSA's networks.*

27. *It is through such market dominance that HMSA is able to dictate the terms and amount of reimbursement HMA physicians will receive.*

*HMA*, 113 Hawai'i at 112, 148 P.3d at 1214 (emphasis and brackets in original).

**25.** *Ai's* suggestion that allegations of "competitive injury" are unnecessary might seem inconsistent with the requirement in *HMA* that a plaintiff allege the "nature of the competition" in order to plead an unfair methods of competition claim under HRS § 480–2(e). However, when this passage from *Ai* is viewed in the context of the facts the case, it is apparent that this court was explaining that injury to "business or property" means that a private plaintiff does not need to allege that he or she suffered an injury to his or her business property or in a business activity, but rather can allege that he or she suffered an injury to personal property. *Ai*, 61 Haw. at 614, 607 P.2d at 1310. Moreover, *Ai* involved alleged unfair or deceptive acts or practices, not unfair methods of competition, *id.* at 611, 607 P.2d at 1308, and therefore this court did not address the requirements to properly plead an unfair methods of competition claim.

ees did not sufficiently allege the "nature of the competition" as required by *HMA*.

### 1. Employees have alleged an injury in fact to their "business or property"

■ Employees sufficiently alleged an injury to their "business or property" within the meaning of HRS § 480–13(a). HRS § 480–13(a)'s requirement of alleging an injury to business or property incorporates the fundamental standing requirement that a plaintiff must allege an injury in fact, but narrows it so that a plaintiff must specifically allege an injury in fact to his or her "business or property." Employees argue that Four Seasons' alleged violation of § 481B–14 directly injures them in both their "business," which is working as banquet servers, and their "property," in the form of "loss of tip income."

The phrase "injury to business or property" found in HRS § 480–13(a) is not defined in that section or elsewhere in the chapter. However, as discussed above, this court has established that the requirement is satisfied, for example, if "plaintiffs allege that injury occurred to personal property through a payment of money wrongfully induced," *HMA*, 113 Hawai'i at 114, 148 P.3d at 1216 (quoting *Ai*, 61 Haw. at 614, 607 P.2d at 1310), or through the diminishment of financial resources as a result of a defendant's unfair methods of competition or unfair or deceptive acts or practices, *id.* Therefore, because Employees have alleged that their tip income has been reduced due to Four Seasons' allegedly unlawful conduct, they have alleged an injury to their "business or property."

### 2. Employees failed to allege the "nature of the competition"

■ As noted above, Employees allege in their Amended Complaint that Four Seasons failed to distribute the entirety of its service charge to its employees and to clearly disclose to the purchaser of the services that employees were not receiving the entire service charge as tip income, and further allege that such conduct constitutes a violation of HRS § 481B–14. Pursuant to HRS § 481B–4, such a violation would constitute both an unfair method of competition *and* an unfair or deceptive act or practice under HRS § 480–2(a). However, Employees cannot pursue a claim for unfair or deceptive acts or practices because such a claim can only be brought by consumers, the attorney general or the director of the office of consumer protection. *See* HRS § 480–2(d). Therefore, as was the case in *HMA*, in order to pursue a claim under § 480–2(e) for the unfair methods of competition of Four Seasons, Employees must allege the "nature of the competition."[26] *HMA*, 113 Hawai'i at 111, 148 P.3d at 1213.

Employees allege that they have been directly injured by not receiving a portion of the service charge retained by Four Seasons, or by not receiving the tips hotel patrons might have otherwise left if they had known how the service charge was allocated. Even when viewed in a light most favorable to Employees, the Amended Complaint clearly does not contain any allegations concerning the nature of the competition. However, Employees are required to allege how Four

---

**26.** The dissent suggests that the present case is distinguishable from *HMA* because *HMA* involved an unfair methods of competition claim based on conduct that would also support an unfair or deceptive acts or practices claim, and that the requirement in *HMA* that the plaintiffs allege the nature of the competition was "to preserve the distinction" between the two claims. Dissenting Opinion at 452, 228 P.3d at 332. The dissent therefore argues that because HRS § 481B–4 deems a violation of chapter 481 to be both an unfair method of competition and an unfair or deceptive act or practice under HRS § 480–2, the need for distinction between the two claims as articulated in *HMA* is not present in the instant case. Dissenting Opinion at 452–54, 228 P.3d at 332–34.

However, this court in *HMA* did not indicate that a plaintiff alleging an unfair method of competition under HRS § 480–2(e) must plead the nature of the competition merely so there is a distinction between claims of unfair or deceptive acts or practices and claims of unfair methods of competition. While recognizing that such distinction is necessary, this court further indicated that "the existence of the competition is what distinguishes a claim of unfair or deceptive acts or practices from a claim of unfair methods of competition." *HMA*, 113 Hawai'i at 112, 148 P.3d at 1214. In other words, this court indicated that the pleading requirement is based on the differences in the nature of the underlying causes of action. Therefore, HMA's holding is equally applicable to the instant case.

438

Seasons' conduct will negatively affect competition in order to recover on an unfair methods of competition claim.[27]

Amicus Curiae Rossetto suggests that this court's opinion in *Island Tobacco Co., Ltd. v. R.J. Reynolds Tobacco Co.,* 63 Haw. 289, 627 P.2d 260 (1981), "recognized that there need be no 'injury to competition' in order for [an unfair method of competition] claim to lie under HRS § 480–2." For support, Amicus Curiae Rossetto cites to the following passage from that case:

> [W]e view § 480–2 as being designed to aid "competitors," as much as to protect "competition." And unlike the Federal Trade Commission Act, the policy of the Hawaii law, as expressed in HRS § 480–13, is to foster private suits grounded on *unfair or deceptive trade practices,* even where the unlawful acts to [sic] not culminate in injury to "competition."

*Island Tobacco,* 63 Haw. at 301, 627 P.2d at 269 (emphasis added).

This passage, however, does not support Amicus Curiae Rossetto's argument. Rather, this language was limited to claims of unfair or deceptive trade practices, rather than unfair methods of competition, and was used to explain that an act can constitute an unfair or deceptive practice if it injures a competitor, even if it does not injure competition itself. *Id.* This analysis does not extend to claims involving unfair methods of competition.

Employees argue that "since § 481B–4 'deems' a violation of [§ 481B–14] to be an 'unfair method of competition' under § 480–2, this Court should not require further proof that such a violation is in fact an [unfair method of competition]." Citing to this

court's previous holding in *Ai,* Amicus Curiae Rossetto similarly contends that the legislature, "by 'deeming' a violation of Section 481B–14, through the operation of Section 481B–4, to be *a per se* [unfair method of competition] has found the necessary element of 'competition' by its legislative action." For the following reasons, these arguments confuse the requirements necessary to bring an unfair methods of competition claim under HRS § 480–2(e).

▪ The requirement that the plaintiff allege the "nature of the competition" in an unfair methods of competition claim is distinct from the requirement that a defendant's conduct constitute an unfair method of competition. The latter requirement stems from HRS § 480–2(a), which provides that unfair methods of competition are declared to be unlawful. *See Robert's Hawai'i,* 91 Hawai'i at 255, 982 P.2d at 884 ("Generally speaking, competitive conduct is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.") (internal quotations omitted; citation omitted); *Cieri,* 80 Hawai'i at 61, 905 P.2d at 36 ("It is impossible to frame definitions which embrace all unfair practices.... Whether competition is unfair or not generally depends upon the surrounding circumstances of the particular case.") (citation omitted).

In contrast, the requirement that a plaintiff allege that he or she was harmed *as a result* of actions of the defendant that negatively affect competition is derived from HRS § 480–13(a)'s language that "any person who is injured in the person's business or property *by reason of* anything forbidden or de-

**27.** Thus, we respectfully disagree with the dissent's suggestion that the Amended Complaint sufficiently alleged the nature of the competition. Dissenting Opinion at 460–61, 228 P.3d at 340–41. In *HMA,* after recognizing that the standard of review for a motion to dismiss or motion for judgment on the pleadings requires this court to accept the allegations in the complaint as true and construe the allegations in the light most favorable to the plaintiff, we held that this standard does not relieve plaintiffs from the requirement of pleading the nature of the competition in the complaint itself. *See HMA,* 113 Hawai'i at 113, 148 P.3d at 1215 ("In sum, we hold that any

person may bring a claim of unfair methods of competition based upon conduct that could also support a claim of unfair or deceptive acts or practices *as long as the nature of the competition is sufficiently alleged in the complaint* ") (emphasis added). In *HMA,* we concluded that HMA sufficiently alleged the nature of the competition because the complaint itself contained specific references to the anti-competitive effect HMSA's alleged actions would have on the marketplace for healthcare services in Hawai'i and that HMA's injury directly resulted from these unfair methods of competition. *See supra,* section II–C and notes 23 and 24.

clared unlawful by this chapter ... [m]ay sue for damages ...;" (emphasis added).

In *Robert's Hawai'i*, this court discussed the elements that must be established to bring a claim under HRS § 480–13(a). 91 Hawai'i at 254 n. 31, 982 P.2d at 883 n. 31. We held that "the elements of (1) resulting injury to business or property and (2) damages" are "two distinct elements" of HRS § 480–13(a), and went on to note that:

> Indeed, federal case law has interpreted the "injury to business or property" language of section 4 of the Clayton Act as a causation requirement, requiring a showing of "antitrust injury." "Plaintiffs must prove ... [an] injury of the type the antitrust laws were intended to prevent[, one] ... that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be the 'type of loss' that the claimed violations ... would be likely to cause."
>
> Also known as the "fact of damage" requirement, the antitrust plaintiff need not prove with particularity the full scope of profits that might have been earned. Instead, it requires a showing, with some particularity, of actual damage caused by anticompetitive conduct that the antitrust laws were intended to prevent.

*Id.* (internal citations omitted; ellipses and brackets in original); *see also HMA*, 113 Hawai'i at 114 n. 30, 148 P.3d at 1216 n. 30 (citing *Robert's Hawai'i*, 91 Hawai'i at 254 n. 31, 982 P.2d at 883 n. 31).

HRS § 481B–4 declares that "[a]ny person who violates this chapter shall be deemed to have engaged in an unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480–2." Amicus Curiae Rossetto contends that Employees do not need to allege the "nature of the competition" because Employees' claim is based upon a statutory violation deemed by HRS § 481B–4 to be "per se" an unfair method of competition, rather than a claim based on an unfair or deceptive act or practice that is also being alleged to be an unfair

method of competition, as was the case in *HMA*. However, although the deeming language of HRS § 481B–4 eliminates the requirement that a plaintiff prove that a defendant's conduct that violates chapter 481B (including HRS § 481B–14) constitutes an unfair method of competition, it does not purport to modify the causation requirement of HRS § 480–13.

Moreover, even if this court were to determine that the language of HRS § 481B–4 is ambiguous, the legislative history of HRS § 481B–4 does not reflect an intent to eliminate the causation requirement of HRS § 480–13(a). The current deeming language of HRS § 481B–4 ("deemed to have engaged in an unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480–2") was added in 1996 pursuant to Act 59. 1996 Haw. Sess. Laws Act 59, § 4 at 83. Prior to the enactment of Act 59, HRS chapter 481B contained a variety of different enforcement provisions which were replaced by HRS § 481B–4. *See, e.g., id.* (replacing the provision in HRS § 481B–4 which provided that violators could be "fined not more than $500 for each violation or imprisoned not more than one year or both" with the present deeming language).

The Senate Judiciary Committee report indicates that:

> The purpose of the bill is to provide a consistent penalty for certain specific unfair and deceptive acts or practices of regulated industries under chapter 480, ... governing monopolies and restraint of trade.
>
> Your Committee finds that this bill is intended to delete duplicative or unnecessary penalty provisions and by deeming the violations to constitute unfair and deceptive business practices under section 480–2[.]

S. Stand. Comm. Rep. No. 2103, in 1996 Senate Journal, at 1016–17.

The report of the House Consumer Protection & Commerce and Judiciary committees similarly provides that "[t]he purpose of this bill is to provide consistency in the consumer protection statutes by amending certain pro-

visions so that they uniformly relate to the unfair or deceptive acts or practices statute" and that the "bill is designed to remove duplicative or unnecessary recitation of penalty provisions in favor of a simple reference to the unfair or deceptive acts or practices statute." H. Stand. Comm. Rep. No. 1459–96, in 1996 House Journal, at 1610.

While the committee reports reflect a desire for consistency in enforcement, they do not indicate that the legislature intended to modify the causation requirements which are generally applicable to unfair methods of competition claims under HRS § 480–13(a).

The dissent argues that because the legislative history indicates that HRS § 481B–14 was intended to prevent harm to employees, it can therefore be inferred that the legislature did not intend to require that a plaintiff plead the nature of the competition in order to bring an unfair methods of competition claim under HRS § 480–2(e). Dissenting Opinion at 457–58, 228 P.3d at 337–38 However, as we discuss above in section II–B–2, the legislative history of HRS § 481B–14 indicates that both employees *and* consumers may be negatively impacted when a hotel or restaurant withholds a service charge without disclosing to consumers that it is doing so. Moreover, the legislature chose to place HRS § 481B–14 within Hawaii's consumer protection statutes and provided that it be enforced through HRS § 480–13. Therefore, while the legislative history of HRS § 481B–14 recognizes that employees are negatively impacted when a hotel or restaurant does not properly distribute the service charge, neither this recognition nor anything else in the legislative history of HRS §§§ 481B–14, 481B–4, or 480–2(e) indicate that the legislature intended to eliminate the causation requirements of HRS § 480–13 for unfair methods of competition claims brought under HRS § 480–2(e).

This analysis is consistent with *Ai*, which involved debt collection practices alleged to be unfair or deceptive acts or practices in violation of Chapter 443 and a "deeming" provision similar to HRS § 481B–4. 61 Haw. at 608–10, 607 P.2d at 1307–08. That provision provided that: "[a] violation of this part by a collection agency shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480–2." *Ai*, 61 Haw. at 610 n. 5, 607 P.2d at 1308 n. 5 (citing HRS § 443–47). This court discussed the relationship between that provision and HRS § 480–2, recognizing that:

the legislature ... did not leave to the judiciary the unfettered discretion to independently determine in every case brought under [§ ]480–2 whether a defendant's conduct had been "unfair or deceptive" within the comprehension of the statute. The legislature instead found it desirable to *predetermine that violations of HRS Chapter 443 would constitute per se "unfair or deceptive acts or practices" for the purposes of § 480–2.*

*Id.* at 616, 607 P.2d at 1311 (emphasis added).

Applying *Ai's* reasoning here, by "deeming" a violation of § 481B–14 to be an unfair method of competition, the legislature "predetermine[d]" that violations of HRS Chapter 481B would constitute per se unfair methods of competition for the purposes of § 480–2, and therefore a plaintiff with standing need not prove that conduct which violates HRS § 481B constitutes an unfair method of competition. *See id.* However, by so doing, the legislature did *not* determine that an injury suffered by "any person" as a result of a violation of chapter 481B necessarily stems from the negative effect on competition caused by the violation. In other words, the legislature was not making a determination that any person injured as a result of a violation of Chapter 481B automatically has standing to sue pursuant to HRS § 480–2 and 480–13. Instead, a private person must separately allege the nature of the competition in accordance with this court's holding in *HMA.*

At the time *Ai* was decided, HRS § 480–13 required the plaintiff to show that the suit would be in the public interest or that the defendant is a merchant. This requirement was eliminated by the 1987 amendment to HRS §§ 480–2 and –13. *See HMA,* 113 Hawai'i at 114 n. 31, 148 P.3d at 1216 n. 31 (citing S. Conf. Comm. Rep. No. 105, in 1987 Senate Journal, at 872). In *Ai,* this court

held that "[s]ince plaintiffs herein have supplied allegations adequate to show that such a per se violation of [§ ]480–2 has occurred, we accordingly find that the public interest has been sufficiently made out to confer standing to plaintiffs under § 480–13." *Id.* at 617, 607 P.2d at 1311. The dissent argues that this public interest requirement "is directly analogous to the ... requirement that [Employees] plead the 'nature of [the] competition' inasmuch as both are aimed at addressing the anti-competitive effects of such conduct[,]" and therefore this court's holding in *Ai* indicates that in cases of per se violations of HRS § 480–2, a plaintiff need not allege the nature of the competition in order to assert an unfair methods of competition claim. Dissenting Opinion at 455, 228 P.3d at 335. Amicus Curiae Rossetto similarly asserts that *Ai* indicates that when there is a per se violation of Hawai'i's antitrust or consumer protection laws, the plaintiff does not need to allege the nature of the competition in order to bring an unfair methods of competition claim under HRS § 480–2(e).

However, this argument misconstrues *Ai*. As discussed above, *Ai* merely emphasized that when the legislature "deems" a practice to be a per se unfair method of competition or unfair or deceptive act or practice within the meaning of HRS § 480–2, a plaintiff with standing to sue does not need to prove that the defendant's action actually constituted either an unfair method of competition or unfair or deceptive act or practice, and does not need to make any additional showing that the suit was in the public interest. *Id.* at 616, 607 P.2d at 1311. Moreover, the now-repealed public interest requirement was not "directly analogous" to the nature of the competition, as the dissent suggests. Although this court in *Ai* indicated the public interest requirement can be satisfied when "the unfair method employed threatens the existence of present or potential competition[,]" we also indicated that the requirement can be satisfied in circumstances where there is no such threat, including when "the unfair method is being employed under circumstances which involve flagrant oppression of the weak by the strong." *Ai*, 61 Haw. at 614–15, 607 P.2d at 1310 (citing *F.T.C. v. Klesner*, 280 U.S. 19, 28, 50 S.Ct. 1, 74 L.Ed.

138 (1929) (explaining that the purpose of the public interest requirement is to ensure that a suit brought by the FTC under the FTCA is truly in the interest of the public as a whole, not merely private individuals); *see Ailetcher v. Beneficial Fin. Co.*, 2 Haw.App. 301, 306, 632 P.2d 1071, 1076 (1981) (finding the public interest requirement was satisfied in an unfair or deceptive practices case because, even though "the action of the [defendant finance company was not] such as to constitute an unfair method of competition, a restraint of trade or a monopolization of an area of commerce[,]" there was "flagrant oppression of the weak by the strong"), *abrogated · on other grounds by Hac v. Univ. of Hawaii*, 102 Hawai'i 92, 105–06, 73 P.3d 46, 59–60 (2003); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 636 (9th Cir.1987) ("Under Hawai'i law, an unfair act is committed, and the public interest requirement is met, whenever the unfair method is being employed under circumstances which involved flagrant oppression of the weak by the strong.")(internal quotation marks omitted). Therefore, contrary to the dissent's and Amicus Curiae Rossetto's assertions, this court's holding in *Ai* does *not* stand for the proposition that where a statute deems an action to be a per se violation of Hawaii's antitrust or consumer protection laws, the plaintiff is relieved of alleging the nature of the competition in order to have standing to sue under HRS § 480–2(e).

Amicus Curiae Rossetto also cites to *Flores v. Rawlings Co., LLC*, 117 Hawai'i 153, 177 P.3d 341 (2008), for the proposition that Employees do not need to allege the nature of competition because HRS § 481B–4 "deems" a violation of HRS § 481B–14 to be an unfair method of competition. However, *Flores* does not support this argument.

The plaintiffs in *Flores* were members of HMSA's benefit plans and brought an action against a company (Rawlings) that had contracted with HMSA to provide subrogation and "claims recovery services." *Id.* at 155–57, 177 P.3d at 343–45. The plaintiffs alleged that they were injured by Rawlings' failure to register as a debt collection agency as required by HRS § 443B–3(a) (1993), which, pursuant to HRS § 443B–20, would consti-

tute an unfair or deceptive act or practice within the meaning of HRS § 480–2.[28] *Id.* Similar to HRS § 481B–4, HRS § 443B–20 (1993) provides that "[a] violation of this chapter by a collection agency shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480–2." *Id.* at 162, 177 P.3d at 350. Because the plaintiffs alleged that Rawlings' actions constituted unfair or deceptive acts or practices rather than unfair methods of competition, HRS § 480–13(b) was applicable, requiring plaintiffs to show that they were "consumers" who were "injured" within the meaning of § 480–13(b) and HRS § 480–1.[29] *Id.* This court held that the plaintiffs were "consumers" without having to prove that they "purchased" something from the defendant. *Id.* at 162–66, 177 P.3d at 350–54.

This court recognized that "[b]y deeming violations of HRS chapter 443B an unfair or deceptive act or practice for the purposes of HRS § 480–2, it is evident that the legislature wished to have chapter 443B be enforceable in the same manner as other unfair trade practices under chapter 480[,]" i.e., enforceable by individual consumers under HRS § 480–2(d). *Id.* at 164, 177 P.3d at 352. If private enforcement was limited to those who purchased from a collection agency, then as a practical matter consumers would not be able to enforce the statute and enforcement "would be left entirely in the hands of the state[,]" because consumers do not typically purchase goods or services from collection agencies. *Id.* This would be "an inconsistent, if not absurd, result that the legislature would not have intended." *Id.* Therefore, this court held that:

Rather, in the context of consumer debt, the determination of whether the individual seeking suit is a "consumer" should rest

on whether the underlying transaction which gave rise to the obligation was for a good or service that is "primarily for personal, family, or household purposes," HRS § 480–1. This reading is supported by the definition of "debt" in HRS § 443B–1, as well as the fact that the statutory structure of HRS chapter 480 does not require that one be a "consumer" of the *defendant's* goods or services, but merely a "consumer."

*Id.* at 164, 177 P.3d at 352 (emphasis in original).

Although this court held that the plaintiffs had established standing as consumers, we further concluded that the plaintiffs failed to demonstrate that they were injured as a result of Rawlings' conduct because, although Rawlings had failed to register as required by HRS § 443B–3, the underlying debt was nevertheless valid. *Id.* at 169, 177 P.3d at 357. We observed that "Rawlings's conduct in violation of HRS § 443B–3, while injurious to the state's interest in regulation of collection agencies, did not directly harm Plaintiffs." *Id.* at 171, 177 P.3d at 359.

This court's analysis in *Flores* addressed alleged unfair or deceptive acts or practices in the area of consumer debt collection and did not extend to cases involving ·alleged unfair methods of competition. Unlike the present case, this court in *Flores* was construing HRS § 480–13(b), which provides the cause of action for unfair or deceptive acts or practices. Thus, *Flores* cannot be construed to mean that unfair methods of competition claims may be brought under HRS § 480–2(e) and § 480–13(a) without any reference to the effect on competition simply because HRS § 481B–4 "deems" a violation of § 481B–14 to be an unfair method of competition.[30] In any event, even though *Flores*

---

**28.** HRS § 443B–3(a) (1993) provides:

No collection agency shall collect or attempt to collect any money or any other forms of indebtedness alleged to be due and owing from any person who resides or does business in this State without first registering under this chapter.

**29.** HRS § 480–1 (1993) defines "consumer" as: "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase

goods or services or who commits money, property, or services in a personal investment." *Flores,* 117 Hawai'i at 162–63, 177 P.3d at 350–51.

**30.** Amicus Curiae Rossetto additionally cites to *Fuller v. Pac. Med. Collections, Inc.,* 78 Hawai'i 213, 891 P.2d 300 (App.1995), in which the Intermediate Court of Appeals held that although the Director of the Department of Commerce and Consumer Affairs was designated to enforce HRS chapter 443, a consumer could maintain an ac-

involved a deeming provision similar to that here, this court acknowledged that the requirements imposed by HRS § 480–13 were nonetheless applicable. *See Flores*, 117 Hawai'i at 162, 177 P.3d at 350 ("In order for Rawlings's failure to register to be actionable by private litigants, the threshold requirements of HRS § 480–13 must be satisfied.").

Therefore, although Employees allege that they have suffered an injury resulting from Four Seasons' violation of § 481B–14, which is deemed to be an unfair method of competition by § 481B–4, Employees are additionally required to allege the "nature of the competition." *HMA*, 113 Hawai'i at 113, 148 P.3d at 1215. Employees have made no such allegation, and therefore have not satisfied the requirements to pursue a claim under HRS § 480–2(e).[31]

We note that this result is consistent with the principles of causation that have been developed in the federal antitrust context. In both *Robert's Hawai'i* and *HMA*, this court recognized that "federal case law has interpreted the 'injury to business or property' language of section 4 of the Clayton Act as a causation requirement, requiring a showing of 'antitrust injury.'" *Robert's Hawai'i*, 91 Hawai'i at 254 n. 31, 982 P.2d at 883 n. 31; *HMA*, 113 Hawai'i at 114 n. 30, 148 P.3d at 1216 n. 30 (quoting *Robert's Hawai'i*, 91 Hawai'i at 254 n. 31, 982 P.2d at 883 n. 31). In *Robert's Hawai'i*, this court further

noted that the antitrust injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." 91 Hawai'i at 254 n. 31, 982 P.2d at 883 n. 31 (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)).

When examining HRS § 480–2, this court has recognized that "[t]he genesis of Hawai'i's consumer protection statute is in federal antitrust law," with a shared "concern for the preservation of unrestrained economic competition and free trade." *Cieri v. Leticia Query Realty, Inc.*, 80 Hawai'i 54, 59, 905 P.2d 29, 34 (1995). HRS § 480–2(a), which declares that unfair methods of competition and unfair or deceptive acts or practices are unlawful, is "a virtual counterpart of [§ ]5(a)(1) of the Federal Trade Commission Act [FTCA]." *Island Tobacco*, 63 Haw. at 300, 627 P.2d at 268. HRS § 480–2(b) declares that "[i]n construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission [FTC] and the federal courts interpreting section 5(a)(1) of the [FTCA]. . . ." However, section 480–2 "differs from section 5 of the FTCA in one essential aspect—enforcement. Section 5 of the FTCA contains no private remedy, rather enforcement of its provisions is vested in the [FTC]." *HMA*, 113 Hawai'i at 109, 148

---

tion under HRS § 480–2(d) for an unfair or deceptive act or practice claim because HRS § 443B–20 provided that violations of chapter 443 constitute unfair or deceptive acts or practices. *Id.* at 218, 891 P.2d at 305. However, because *Fuller* involved only claims of unfair or deceptive acts or practices pursuant to HRS § 480–2(d), it does not address the distinct issue of whether Employees must allege the nature of the competition in order to maintain an unfair methods of competition claim under HRS § 480–2(e).

**31.** Without expressing an opinion regarding its sufficiency, we note that in their Reply Brief, Employees described how they would characterize the "nature of the competition" if they were required to allege it:

[E]ven if there were some requirement that the unfair method of competition be asserted, the remedy would not be dismissal, but at worst, to allow the plaintiffs to allege such "unfair method". Indeed, it is obvious that if one

hotel obeys the laws and remits the entire service charge to the employees serving at the banquet and another hotel/competitor skims the service charge and keeps 4–5% for itself without disclosure, the hotel acting unlawfully can undercut its stated price for the banquet knowing that it will be receiving improper gains from the misleading description of its service charge. This is clearly a form of unfair competition.

Amicus Curiae Rossetto similarly states that:

In this case, hotels and restaurants that do not inform customers that they are keeping the imposed service charge and not paying it to employees gain a clear competitive advantage because they have deceived their patrons. They are able to "reduce" the published cost of their food and beverages in order to entice patronage away from their honest competitors who either pay out the service charge to employees or frankly inform patrons that management is keeping all or a part of the service charge (thereby telling patrons that they will still have to tip employees).

P.3d at 1211 (quoting *Star Markets, Ltd. v. Texaco, Inc.*, 945 F.Supp. 1344, 1346 (D.Haw. 1996) and citing *Robert's Hawai'i*, 91 Hawai'i at 249, 982 P.2d at 878) (internal parenthetical and quotation marks omitted). Therefore, federal interpretations of the FTCA, although helpful in determining whether a defendant's actions constitute an unfair or deceptive act or practice or an unfair method of competition, are of limited relevance in interpreting the standing requirements applicable to the private right of action provided by HRS § 480–2(e).[32]

HRS § 480–13(a) tracks the language of section 4 of the Clayton Act, which provides in relevant part:

> *Any person* who shall be *injured in his business or property* by reason of anything forbidden in the antitrust laws may sue therefor ...., and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15(a) (emphasis added).

Additionally, HRS § 480–3 provides that "[chapter 480] shall be construed in accordance with judicial interpretations of similar federal antitrust statutes." Pursuant to this instruction, this court has indicated that it is appropriate to look to "the guidance of similar federal antitrust statutes as permitted in HRS § 480–3." *Robert's Hawai'i*, 91 Hawai'i at 251, 982 P.2d at 880.[33]

The Supreme Court first articulated the concept of "antitrust injury" in *Brunswick*. 429 U.S. at 489, 97 S.Ct. 690. Several bowling centers brought suit, challenging the acquisition of several of their competitors by Brunswick Corporation as creating a monopoly in violation of section 7 of the Clayton Act, 15 U.S.C. § 18,[34] and seeking treble

---

**32.** When interpreting HRS § 480–2(e), Amicus Curiae Rossetto urges this court to only consider federal interpretations of section 5(a)(1) of the FTCA pursuant to HRS § 480–2(b), and not interpretations of section 4 of the Clayton Act. Specifically, Amicus Curie Rossetto argues that section 5(a)(1) of the FTCA has been interpreted in *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972), to empower the FTC to define unfair practices to include practices without anti-competitive effects. However, this argument is misplaced, because as discussed above, interpretations of section 5(a)(1) of the FTCA are of limited relevance in analyzing standing requirements for HRS § 480–2(e) since the FTCA does not have a comparable private right of action. *See supra*, note 8.

**33.** Four Seasons argues that because § 480–13(a) is similar to section 4 of the Clayton Act, this court should examine relevant federal judicial interpretations of that statute pursuant to HRS § 480–3, citing, for example, to *Associated Gen. Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (hereinafter *"AGC"*). In *AGC*, the Supreme Court discussed the concept of standing under section 4 of the Clayton Act to sue for violations of federal antitrust law, and noted that standing in the antitrust context is more limited than the broad "any person" language of the statute would suggest. *Id.* at 534–35, 103 S.Ct. 897.

The Supreme Court identified a number of factors to assist courts in determining whether a plaintiff has established federal antitrust standing. The first factor, which was described by the Court in *AGC* as the "nature of the plaintiff's alleged injury[,]" and which considered whether the injury is the "type that Congress sought to redress," *AGC*, 459 U.S. at 538, 103 S.Ct. 897 (citation omitted), has since been referred to as "antitrust injury," meaning an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful[,]" *see, e.g., Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990); *Eichorn v. AT & T Corp.*, 248 F.3d 131, 140 (3d Cir.2001). The other factors identified by the Court in *AGC* are: the "directness or indirectness of the asserted injury," the "speculative measure of harm," the "risk of duplicate recoveries" or "danger of complex apportionment of damages" and "the existence of more direct victims of the alleged [violation]." *AGC*, 459 U.S. at 538–545, 103 S.Ct. 897; *see also Atl. Richfield*, 495 U.S. at 334, 110 S.Ct. 1884; *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1054 (9th Cir.1999).

Other than recognizing that federal courts have consistently applied the concept of antitrust injury when determining if a plaintiff has federal antitrust standing, this court has not expressly applied the *AGC* analysis to unfair methods of competition claims arising under HRS chapter 480. *Robert's Hawai'i*, 91 Hawai'i at 254 n. 31, 982 P.2d at 883 n. 31; *HMA*, 113 Hawai'i at 114 n. 30, 148 P.3d at 1216 n. 30. Since we have decided, based on our analysis of HRS § 480–13(a) and Hawai'i caselaw, that Employees must allege the nature of the competition, we do not need to consider the applicability of the *AGC* approach in order to answer the certified question.

**34.** Section 7 of the Clayton Act proscribes mergers whose effect "may be substantially to lessen competition, or tend to create a monopoly." *Brunswick*, 429 U.S. at 485, 97 S.Ct. 690.

damages under section 4 of the Clayton Act for profits they would have received had the acquired centers gone out of business. 429 U.S. at 480–81, 97 S.Ct. 690. The plaintiffs "attempted to show that had [the defendant] allowed the defaulting centers to close, [the plaintiffs'] profits would have increased." *Id.* at 481, 97 S.Ct. 690. The Court noted that plaintiffs were not complaining that Brunswick's actions had reduced competition, but rather preserved it and therefore deprived plaintiffs of increased concentration. *Id.* at 488, 97 S.Ct. 690. Accordingly, the Court found that the plaintiffs' injury was not of " 'the type that the statute was intended to forestall.' " *Id.* at 487–88, 97 S.Ct. 690 (citation omitted).

The Court examined the underlying purpose of section 7, noting that although "[e]very merger ... has the potential for producing economic readjustments that adversely affect some persons ... Congress has not condemned mergers on that account; it has condemned them only when they may produce *anticompetitive effects.*" *Id.* at 487, 97 S.Ct. 690 (emphasis added). Therefore, the Court held that in order to recover treble damages under section 4 of the Clayton Act based on section 7 violations, "[p]laintiffs must prove antitrust injury, which ... should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* at 489, 97 S.Ct. 690.

Additionally, the Supreme Court has clearly established that even where a plaintiff alleges a per se violation of the antitrust laws, the plaintiff must still allege and prove antitrust injury by alleging the nature of the competition in order to ensure that the injury results from a competition-reducing aspect of the defendant's behavior. For example, in *Atl. Richfield Co. v. USA Petroleum Co.,*[35] 495 U.S. 328, 341, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990), the Court "reject[ed]

respondent's suggestion that no antitrust injury need be shown where a per se violation is involved." "The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior. The need for this showing is at least as great under the per se rule...." *Id.* at 344, 110 S.Ct. 1884 (emphasis in original); *see also Glen Holly Entm't, Inc. v. Tektronix, Inc.,* 343 F.3d 1000, 1008 (9th Cir.2003) ("If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal *per se.*") (citation omitted); *Pace Elec., Inc. v. Canon Computer Sys.,* 213 F.3d 118, 123–24 (3d. Cir.2000) (holding that in order to show standing for a per se antitrust violation, the plaintiff need not allege that its injury actually "produced an anticompetitive result," but instead must allege that its injury "resulted from the anticompetitive aspect of the challenged conduct").

The Ninth Circuit reviewed the purpose of requiring plaintiffs to allege loss stemming from an anticompetitive effect of the defendant's actions in *Glen Holly.* Two manufacturers of film editing equipment entered into an agreement to jointly market certain products, with the agreement also prohibiting one of the manufacturers from selling the products to certain customers, such as the plaintiff. *Glenn Holly,* 343 F.3d at 1005–06. The plaintiff alleged that this joint venture caused the plaintiff to lose its customers and was "purposefully anti-competitive" in violation of sections 1 and 2 of the Sherman Act and California antitrust law because it created a monopoly and destroyed competition in the relevant market. *Id.* at 1006–07. The court recognized that "[t]he central purpose of the antitrust laws, state and federal, is to *preserve competition.* It is competition ... that

---

**35.** It is important to note that *Atl. Richfield* involved a judicially recognized per se antitrust violation, whereas the per se violation of Hawai'i antitrust law in this case is established by HRS § 481B–4. However, this distinction has no bearing on the underlying analysis for the antitrust injury requirement in the circumstances here, where we have concluded that the legislature did not intend to modify the causation re-

quirements imposed by HRS § 480–13. Thus, it makes no difference whether the courts or the legislature have "deemed" certain action to be anti-competitive, because the purpose of the antitrust injury requirement is to ensure that the plaintiff's alleged injury stems from this anti-competitive aspect, rather than some pro-competitive or neutral effect of the defendant's antitrust violation.

these statutes recognize as vital to the public interest." *Id.* at 1010 (quoting *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 988 (9th Cir.2000)) (emphasis added). The court then held that the plaintiff sufficiently alleged that the defendants' agreement to "unlawful[ly] remove[ ] a competitive product from the market" was the type of conduct the antitrust laws were designed to prevent and that plaintiff's *"allegation of 'loss stems from a competition-reducing aspect or effect of [defendants'] behavior,'"* thus satisfying the antitrust injury requirement. *Id.* at 1014 (citation omitted; emphasis added).

This court has similarly recognized that Hawaii's consumer protection laws are also intended to preserve competition. For instance, in *Cieri*, which involved claims that the vendors and broker involved in the sale of a residence engaged in unfair or deceptive practices in violation of HRS § 480–2 when they failed to disclose a plumbing problem, this court discussed the underlying purpose of Hawai'i antitrust and consumer protection laws:

> The genesis of Hawai'i's consumer protection statute is in federal antitrust law. Although the federal arsenal of antitrust laws is comprised of several differently worded statutes of varying scope that have generated volumes of case law, all of the acts have a *common focus on trade, commerce, and business,* and all share a *concern for the preservation of unrestrained economic competition and free trade.*

80 Hawai'i at 59, 905 P.2d at 34 (emphasis added).

"Embodied in Hawai'i's virtually word-for-word adoption of the prohibitions contained in the Sherman, Clayton, and FTC acts is the federal antitrust laws' focus on commerce, the economy, and competition." *Id.* at 60, 905 P.2d at 35. This court also recognized that HRS § 480–13 similarly reflects this focus on preserving competition. *Id.* at 61, 905 P.2d at 36.

Thus, Hawaii's requirement that a plaintiff allege the "nature of the competition" in his or her complaint in order to maintain an action for unfair methods of competition pursuant to HRS § 480–2(e), *HMA*, 113 Hawai'i at 113, 148 P.3d at 1215, is consistent with the federal requirement that a plaintiff allege that his or her injury "reflect[s] the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation," in order to have standing pursuant to section 4 of the Clayton Act. *Brunswick*, 429 U.S. at 489, 97 S.Ct. 690. Furthermore, this requirement reflects the underlying purpose of both the federal and Hawai'i antitrust laws, which is to preserve unrestrained competition.

### III.  CONCLUSION

For the foregoing reasons, this court answers the certified question as follows:

Employees are "any persons" within the meaning of HRS §§ 480–1 and 480–2(e) and are within the category of plaintiffs who have standing to bring a claim under HRS § 480–2(e) for a violation of HRS § 481B–14.

However, based on the allegations contained in Employees' Amended Complaint, Employees have not sufficiently alleged the "nature of the competition" to bring a claim for damages against Four Seasons under HRS §§ 480–2(e) and 480–13(a) for a violation of HRS § 481B–14.

Dissenting Opinion by ACOBA, J.

I respectfully dissent.

The certified question presented is whether

> [w]here plaintiff banquet server employees allege that their employer violated the notice provisions of [Hawai'i Revised Statutes (HRS) ] § 481B–14 by not clearly disclosing to purchasers that a portion of a service charge was used to pay expenses other than wages and tips of employees, and where the plaintiff banquet server *employees do not plead the existence of competition or an effect thereon, do the plaintiff banquet server employees have standing under [HRS] § 480–2(e) to bring a claim for damages* against their employer?

(Emphasis added.)

As noted by Plaintiffs–Appellants,[1] the certified question arose as a result of a motion to dismiss filed by Defendants–Appellees Four Seasons Hotel Limited, dba Four Seasons Resort, Maui and Four Seasons Resort, Hualalai, and MSD Capital, Inc. [collectively, Defendants]. Hence, the standard pertaining to such motions applies. In this jurisdiction, a circuit court's ruling on a motion to dismiss is reviewed de novo. *Wright v. Home Depot U.S.A., Inc.,* 111 Hawai'i 401, 406–07, 142 P.3d 265, 270–71 (2006). In that review,

> [a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. [This court] must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. For this reason, *in reviewing a circuit court's order dismissing a complaint[, this court's] consideration is strictly limited to the allegations of the complaint, and [this court] must deem those allegations to be true.*

*In re Estate of Rogers,* 103 Hawai'i 275, 280–81, 81 P.3d 1190, 1195–96 (2003) (citations, brackets, and ellipsis omitted) (emphasis in original).[2] In my view, it is not beyond doubt that Plaintiffs can establish *no* set of facts under which relief could be granted. Accordingly, Plaintiffs' amended complaint should not be dismissed.

### I.

HRS § 481B–14 (2008 Repl.) states:

**Hotel or restaurant service charge; disposition.** Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge directly to its employees as tip income or *clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wage and tips of employees.*

(Boldfaced font in original.) (Emphasis added.) In conjunction with HRS § 481B–14, HRS § 481B–4 (2008 Repl.), entitled "Remedies," states that "[a]ny person who violates this chapter [ (HRS 481B) ] shall be *deemed* to have engaged in an unfair method of competition *and* unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480–2." (Emphases added.) In that regard, HRS § 480–2(a) (2008 Repl.) states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Further, HRS § 480–2(e) (2008 Repl.) provides that "[a]ny person may bring an action based on unfair methods of competition declared unlawful by this section." HRS § 480–1 (2008 Repl.) provides in part that " '[p]erson' or 'persons' includes individuals[.]"

The amended complaint states in relevant part that:

> 4. For banquets, events, meetings and in other instances, *the defendants add a preset charge to customers' bills for food and beverage* provided at the hotels.

> 5. *However, the defendants do not remit the total proceeds of the service charge as tips income to the employees* who serve the food and beverages.

> 6. Instead, the defendants have a policy and practice of retaining for themselves a portion of these service charges (or using it to pay managers or other non-tipped

---

**1.** Plaintiffs–Appellants are Daryl Dean Davis, Mark Apana, Elizabeth Valdez Kyne, Earl Tanaka, Thomas Perryman, and Deborah Scarfone, on behalf of themselves and all others similarly situated, and are hereinafter referred to collectively, as "Plaintiffs."

**2.** The federal standard of review is the same. We review *de novo* the district court's decision to grant a motion to dismiss pursuant to [Federal Rules of Civil Procedure Rule] 12(b)(6). *ASW v. Oregon,* 424 F.3d 970, 974 (9th Cir.

2005). We accept as true all well-pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party. *Id.* A claim should be dismissed only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted. *Pacheco v. United States,* 220 F.3d 1126, 1129 (9th Cir.2000).
*Watson v. Weeks,* 436 F.3d 1152, 1157 (9th Cir. 2006).

employees who do not serve food and beverages).

7. *The defendants do not disclose to the hotel's customers that the service charges are not remitted in full to the employees* who serve the food and beverages.

8. For this reason, customers are misled into believing that the entire service charge imposed by the defendants is being distributed to the employees who served them food or beverage when, in fact, a smaller percentage is being remitted to the servers....

. . . .

9. ... *The class to be certified includes all food and beverage servers who ... have served food or beverage at meetings, events, banquets, room service or other such instances where the defendants have added a service charge to the bill for food and beverage service, but have not remitted the entire amount of this service charge to the employees serving the food and beverage....*

. . . .

*The action of the defendants as set forth above are in violation of [HRS § ]481B–14. Pursuant to Section 481B–4, such violation constitutes an unfair method of competition or unfair and deceptive act or practice within the meaning of Section 480–2 ....*

. . . .

WHEREFORE, the plaintiffs request this Honorable Court to ... (2) grant the plaintiffs make whole damage *compensating them for the loss of service charge income which they are entitled to receive;* ... and (4) award the plaintiffs any other relief to which they are entitled.

(Emphases added.)

## II.

HRS § 481B–4 is clear and unambiguous. "Under the canons of statutory construction, 'where the language of the law in question is plain and unambiguous courts must give effect to the law according to its plain and obvious meaning.'" *County of Hawai‘i v. C & J Coupe Family Ltd. P'ship,* 119 Hawai‘i 352, 362, 198 P.3d 615, 625 (2008) (quoting *Mikelson v. United Servs. Auto. Ass'n,* 108 Hawai‘i 358, 360, 120 P.3d 257, 259 (2005)). Thus, "[i]t is well-settled in this jurisdiction that courts turn to legislative history as an interpretive tool only where a statute is unclear or ambiguous." *T–Mobile USA, Inc. v. County of Hawaii Planning Comm'n,* 106 Hawai‘i 343, 352, 104 P.3d 930, 939 (2005) (citing *State v. Mueller,* 102 Hawai‘i 391, 394, 76 P.3d 943, 946 (2003)).

Based on the plain language of HRS § 481B–4, any violation of 481B–14 is a violation of section 480–2(a). The term "deemed" is not defined in HRS chapter 481B. Accordingly, "[t]his court has said that we may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined." *Rapozo v. Better Hearing of Hawaii, LLC,* 119 Hawai‘i 483, 493, 199 P.3d 72, 82 (2008) (quoting *Leslie v. Bd. of Appeals of County of Hawaii,* 109 Hawai‘i 384, 393, 126 P.3d 1071, 1080 (2006)) (brackets omitted).

Applying that principle, the term "deem" means

1. To treat (something) as if (1) it were really something else, or (2) it has qualities that it does not have <although the document was not in fact signed until April 21, it explicitly states that it must be deemed to have been signed on April 14>. 2. To consider, think, or judge <she deemed it necessary>.

"Deem" has been traditionally considered to be a useful word *when it is necessary to establish a legal fiction either positively by 'deeming' something to be what it is not or negatively by 'deeming' something not to be what it is* [.]

*Black's Law Dictionary* 477–78 (8th ed.2004) (emphasis added). Because it is "deemed," i.e., established, that a violation of HRS chapter 481B and, hence, of HRS § 481B–14, is an "unfair method of competition [ (UMOC) ] and unfair or deceptive act or practice [ (UDAP) ]," HRS § 481B–4 renders a violation of HRS § 481B–14, in and of itself, both a UDAP and UMOC. To construe the statute as requiring further allegations or proof of a UDAP or UMOC *in addition* to the violation would render the term

"deemed" superfluous. "It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute." *Camara v. Agsalud,* 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984) (citing *In re Ainoa,* 60 Haw. 487, 490, 591 P.2d 607, 609 (1979)); *Lopez v. Bd. of Trustees,* 66 Haw. 127, 657 P.2d 1040 (1983)). In order to give full effect to HRS § 481B–4, the phrase "shall be deemed" must be construed as establishing a UMOC violation. The drafters of HRS § 481B–4 did not insert conditional language or provide any additional limitations on access to the remedies in HRS § 480–13 (2008 Repl.) after a "deemed" UMOC violation has been established. Rather, the plain language of the statute demonstrates an intent to allow those who have suffered a violation under HRS § 481B–14 to bring an action to enforce their rights under HRS § 480–13. The majority's construction of HRS § 481B–4 deprives the statute of its force and undermines the legislature's manifest intent in enacting the law.

Consequently, based on the plain language of HRS § 481B–4, the amended complaint need not allege any fact to establish Defendants' liability under HRS § 481B–14, other than a violation. In the amended complaint, Plaintiffs have alleged that Defendants have collected service charges relating to the sale of food or beverages but did not distribute the entire service charges directly to their employees and did not disclose this fact to the purchasers. Taking the allegations in the amended complaint as true, as this court is required to do, Plaintiffs have alleged a manifest violation of HRS § 481B–14.[3]

### III.

#### A.

As to other matters raised by the parties, HRS § 480–2 explains who may bring an action for engaging in an unfair or deceptive act or practice or unfair method of competition. In relevant part HRS § 480–2 states:

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

. . . .

(d) *No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices* declared unlawful by this section.

(e) *Any person* may bring an action based on *unfair methods of competition* declared unlawful by this section.

(Emphases added.) HRS § 481B–4 allows a violation of HRS § 481B–14 to be brought as a UMOC action and a UDAP action. As a result, under HRS 480–2(d), a suit for the failure to remit tips may be brought by a consumer, the attorney general, or the director of the Office of Consumer Affairs as a UDAP. In contrast, any "person" is entitled to bring a UMOC action. As noted before, "person," as defined in HRS § 480–1 includes "individuals[.]" Plaintiffs concede that they cannot bring a UDAP action because they are not "consumers" under HRS 480–2(d). However, Plaintiffs may bring an action against Defendants claiming UMOC inasmuch as employees individually do qualify as "any person" under HRS § 480–2. Thus, Plaintiffs' suit is correctly premised on their status as "individuals" allowed to bring suit as "persons" for a UMOC. HRS § 480–1.

#### B.

HRS § 480–13, which applies to HRS chapter 480, allows those harmed by either a UDAP or a UMOC to bring an action for damages and to enjoin the illegal practice. HRS 480–13 states in relevant part:

(a) Except as provided in subsections (b) and (c), *any person who is injured in the person's business or property by reason of*

---

**3.** It should be noted that, at oral argument, Defendants conceded that portions of the service charge were not distributed to the servers as tip income and that notice of this practice was not given to the customers to whom the service charge was applied. Defendants also asserted that this practice has since been changed, and the required HRS § 481B–14 notice given.

*anything forbidden or declared unlawful by this chapter:*

(1) May sue for damages sustained by the person, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit ... and

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees together with the costs of suit.

(Emphasis added.) In the amended complaint, Plaintiffs have alleged that Defendants have collected service charges relating to the sale of food or beverages but did not distribute the entire service charges directly to its employees and did not disclose this fact to the purchasers. Plaintiffs' "Wherefore" clause in the amended complaint alleges that they did not receive the full amount of the service charge levied on purchasers. Taking the allegations as true, the language in HRS § 480–13 permitting a suit based on injuries to "business or property" manifestly includes the economic loss of withheld tip income. Because the disclosure was not made, the tip income did not belong to Defendants. If Plaintiffs are not recompensed as indicated under the statute, a windfall would accrue to Defendants by virtue of a violation of HRS § 481B–14.[4]

## C.

The statutes also mandate that the courts look to federal case law when interpreting HRS chapter 480. HRS § 480–3 (2008 Repl.), entitled "Interpretation," provides

that "[t]his chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes, except that lawsuits by indirect purchasers may be brought as provided in this chapter." HRS § 480–2(b) states that

[i]n construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission [(FTC)] and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act [(FTCA)] (15 U.S.C. 45(a)(1)), as from time to time amended.

Moreover, HRS § 480–13 was. modeled after section 4 of the Clayton Act, 15 U.S.C. § 15(a), and, pursuant to HRS § 480–3, must be construed in light of federal decisions. However, HRS § 481B–14 contains no federal analogue and, as the statutory language indicates, was not enacted simply to prevent anti-competitive conduct that affects consumers and businesses, but was specifically intended to address the direct injuries to the "business and property" of employees such as Plaintiffs, caused by withholding service charges. *See* discussion *infra.* The enforcement provisions in HRS § 480–13 must also be construed in light of the purpose of HRS § 481B–14. Thus, federal law is not a bar to Plaintiffs' action and a plain language construction of HRS § 481B–14 does not contravene HRS § 480–2(b) or HRS § 480–3.

## D.

Defendants argue that "[i]f [Plaintiffs] are correct that [HRS] § 481B–14 was intended to create a wage claim for employees, it is strikingly—if not unconstitutionally—vague."[5] Defendants assert that the statute

---

4. As noted at oral argument, "consumers" and other "persons" may also sue, and an equitable apportionment of damages may be required in any particular case.

5. The majority states that it declines to address this matter because it "does not relate to the issue of whether or not employees have standing under HRS § 480–2(e) to bring a claim for damages for a violation of HRS § 481B–14, but instead relates to the merits of such a claim." Majority opinion at 428, 228 P.3d at 308 n. 13. However, the certified question states that "[t]he

[c]ourt's phrasing of the question should not restrict the [Hawai'i Supreme Court's] consideration of the problems and issues involved." Certified question at 5 (citing *Allstate Ins. Co. v. Alamo Rent–A–Car, Inc.,* 137 F.3d 634, 637 (9th Cir.1998)). Moreover, this court is not required to limit itself to the question certified. *See Richardson v. City & County of Honolulu,* 76 Hawai'i 46, 53, 868 P.2d 1193, 1200 (1994) (addressing the issue of whether the City of Honolulu had authority to enact an ordinance despite the fact that the question was "not expressly placed in issue by the federal court's certified question").

"does not specify which employees should be paid the service charge as tip income." In other words, Defendants argue "the plain language of the statute allows the employer to pick any employee to receive the monies [derived from the service charge] in any amount."

However, HRS § 481B–14 is not vague. The text mandates that the hotel or restaurant "shall distribute the service charge directly to its employees *as tip income* [.]" HRS § 481B–14 (emphasis added). Although "tip" or "tip income" is not defined in HRS chapter 481B, the dictionary definition in this context is "a gift or a usu[ally] small sum of money tendered in payment or often in excess of prescribed or suitable payment for a service performed or anticipated." *Webster's Third New Int'l Dictionary* 2398 (1961).

"[T]o constitute a deprivation of due process, [the civil statute] must be 'so vague and indefinite as really to be no rule or standard at all.'" *Paul v. Dep't of Transp., State of Haw.*, 115 Hawai'i 416, 431, 168 P.3d 546, 561 (2007) (quoting *A.B. Small v. Am. Sugar Refining*, 267 U.S. 233, 239, 45 S.Ct. 295, 69 L.Ed. 589 (1925)). "To paraphrase, uncertainty in this statute is not enough for it to be unconstitutionally vague; rather, it must be substantially incomprehensible." *Id.* (citation omitted). Inasmuch as the tip is a gratuity given for service *to those who perform such service* and the service charge is to be distributed as tip income, it is manifest that the "service charge for the sale of food or beverage services," HRS § 481B–14, is to be given to the employees who provided that service. Hence, the term "employee" cannot be reasonably construed as "allow[ing] the employer to pick any employee to receive the monies in any amount," as Defendants argue. Defendants have not demonstrated a sufficient ambiguity or potential for misunderstanding inherent in the term "employee"

as it relates to the term "tip income." *See also Tauese v. State, Dept. of Labor & Indus. Relations*, 113 Hawai'i 1, 28 n. 27, 147 P.3d 785, 812 n. 27 (2006) ("Because this term is easily definable and allows a person of ordinary intelligence to obtain an adequate description of the prohibited conduct, the statute is not unconstitutionally vague."). Consequently, this argument is unpersuasive.

### E.

Briefly summarized, Plaintiffs have alleged in their amended complaint that Defendants have violated HRS § 481B–14. HRS § 481B–4 permits all violations in chapter 481B to be brought as a UDAP and a UMOC pursuant to HRS § 480–2(d) and (e). Plaintiffs do not qualify as "consumers" to bring a UDAP action under 480–2(d), but do qualify individually as "any person" under HRS § 480–2(e), permitting them to bring a UMOC action against Defendants, provided they allege an injury to their business or property pursuant to HRS § 480–13. Plaintiffs have satisfied HRS § 480–13, which encompasses HRS chapter 480 and permits suits for money damages resulting from UMOC, by adequately pleading an economic injury.[6]

### IV.

However, the majority requires that Plaintiffs allege "the nature of the competition" before they may bring a UMOC action for a violation of HRS § 481B–14 and, therefore, concludes that the amended complaint must be dismissed. The majority bases this additional requirement on four grounds: (1) the application of HRS § 480–13; (2) its interpretation of *Hawaii Medical Ass'n v. Hawaii Medical Service Ass'n*, 113 Hawai'i 77, 148 P.3d 1179 (2006) [hereinafter, "*HMA* "] and

Also, whether Plaintiffs have "standing" in this case is substantially related to whether they are included in the category of employees described in HRS § 481B–14, a proposition Defendants argue is constitutionally barred. Finally, the constitutionality of the statute as disputed between the parties is obviously germane to the viability of the proceeding in federal court. Thus, it is addressed.

**6.** Plaintiffs argue that they believe if the nature of the competition must be pled, they can amend their complaint. However, that would not resolve the case law in this jurisdiction with respect to the application of the term "deemed" in HRS § 481B–4.

certain other Hawai'i cases, (3) the legislative history of HRS § 481B–14, and (4) federal cases addressing federal antitrust law provisions.

## A.

With respect to the first ground, the majority contends that "[t]he requirement that the plaintiff allege the 'nature of the competition' in [a UMOC] claim is distinct from the requirement that a defendant's conduct constituted [a UMOC]." Majority opinion at 438, 228 P.3d at 318. According to the majority, the necessity that Plaintiffs plead a UMOC "stems from HRS § 480–2(a), which provides that" UMOCs are unlawful. *Id.* The majority maintains that a plaintiff must also demonstrate that harm is "*a result* of actions of the defendant that negatively affect competition [ ] derived from HRS § 480–13(a)'s language that 'any person who is injured in the person's business or property *by reason of* anything forbidden or declared unlawful by this chapter … [m]ay sue for damages[.]" *Id.* at 438–39, 228 P.3d at 318–19 (emphasis in original). The majority asserts that Plaintiffs have not met this burden.

To the contrary, Plaintiffs have met the requirements that they plead both a UMOC and an injury "by reason of anything forbidden or declared unlawful by" HRS chapter 480. Plaintiffs have pled a UMOC in alleging that Defendants violated HRS § 481B–14 by withholding monies accrued from the service charge without notifying customers of that fact. The failure to distribute the service charge is unlawful inasmuch HRS § 481B–4 "deems" it a UMOC in violation of HRS § 480–2(e). Thus, Plaintiffs have alleged that Defendants' conduct constituted a UMOC.

Plaintiffs have also pled a resulting injury to "business or property by reason of" actions declared unlawful by HRS chapter 480. As stated previously, HRS 481B–4 specifically "deems" Defendants' alleged conduct "an unfair method of competition … in the conduct of any trade or commerce *within the meaning of section 480–2*." (Emphasis added.) In paragraphs 5, 6, 9 and in the "Wherefore" clause of the amended complaint, Plaintiffs have alleged an injury to

their "business or property" in the loss of income stemming directly from Defendants' failure to distribute the entire service charge or to notify customers that they were doing so. HRS § 480–13. According to the plain language of HRS § 480–13(a), a plaintiff who has demonstrated an injury that stems directly from the unlawful UMOC is entitled to sue for money damages and injunctive relief.

Thus, there is a direct causal link between the injury to property and the acts "forbidden or declared unlawful by" HRS chapter 480 on the face of the amended complaint. As noted before, to construe the statute as requiring plaintiffs to allege the "nature of the competition" *in addition* to a per se UMOC violation renders the term "deemed" superfluous.

## B.

### 1.

As to the second ground, the majority derives from *HMA* the requirement that Plaintiffs allege the "nature of the competition" before they may bring a UMOC action. In *HMA*, a plaintiff medical group consisting of physicians had entered into an agreement with defendant Hawai'i Medical Service Association (HMSA), to provide medical care to HMSA plan members at reduced rates. 113 Hawai'i at 81, 148 P.3d at 1183. The HMA physicians alleged that HMSA had engaged in unfair methods of competition in violation of HRS § 480–2(e). *Id.* at 82, 148 P.3d at 1184.

*HMA* determined that the plaintiffs' allegations against the defendants consisted of UDAP claims, which could only be brought by consumers. However, *HMA* allowed plaintiffs to bring a UMOC action for claims that would also support a UDAP action, provided the plaintiffs, in addition to identifying a UMOC, also alleged how their injury stemmed from the anti-competitive act, i.e., the "nature of the competition." *Id.* at 111–13, 148 P.3d at 1213–15. The reason for this was to preserve the distinction between unfair methods of competition, on one hand, and unfair or deceptive acts or practices that may also constitute unfair methods of competition, on the other hand. *Id.* Thus, *HMA*

said that "the existence of the competition is what distinguishes a claim of unfair or deceptive acts or practices from a claim of unfair methods of competition." *Id.* at 112, 148 P.3d at 1214.

According to this court,

notwithstanding ... our holding that the plaintiffs need not be "competitors" of, or "in competition" with, HMA, the question remains whether the nature of the competition must be sufficiently alleged. Contrary to the dissent, *we conclude that it does because, in the absence of such allegations, the distinction between claims of unfair or deceptive acts or practices and claims of unfair methods of competition that are based upon such acts or practices would be lost where both claims are based on unfair and deceptive acts or practices.* In other words, the existence of the competition is what distinguishes a claim of unfair or deceptive acts or practices from a claim of unfair methods of competition.

*Id.* at 111–12, 148 P.3d at 1213–14 (emphases in original and emphases added). Otherwise, "[t]he distinction between a claim of unfair and deceptive acts or practices and a claim of unfair methods of competition that are based upon such acts or practices would be lost[.]" *Id.* at 111, 148 P.3d at 1213. This motivated the majority in *HMA* to require allegations that "sufficiently allege unfair competition claims" based upon "conduct that would *also* support claims of unfair or deceptive acts or practices[.]" *Id.* at 111, 148 P.3d at 1213 (emphasis added). But that distinction is not controlling here.

The differentiation in *HMA* is wholly irrelevant under the plain language and inherent legislative intent of HRS §§ 481B–14 and 481B–4. *See State v. Buch,* 83 Hawai'i 308, 326, 926 P.2d 599, 617 (1996) ("This court derives legislative intent primarily from the language of the statute and follows the general rule that[,] in the absence of clear legislative intent to the contrary, the plain meaning of the statute will be given effect.") (Citing *State v. Akina,* 73 Haw. 75, 78, 828 P.2d 269, 271 (1992).)) (Brackets omitted.) HRS § 481B–4 renders the distinction and hence, any allegations of the "nature of the

competition" unnecessary inasmuch as a violation of HRS § 481B–14, by virtue of HRS § 481B–4, establishes *both* a UDAP and UMOC under HRS § 480–2. Hence, no allegations in the amended complaint are necessary to draw the distinction made in *HMA.* Even if the word "and" in HRS § 481B–4 ("unfair method of competition *and* unfair or deceptive act or practice" (emphasis added)) is read as "or," the result is the same. In that event the violation would qualify as either a UDAC or a UMOC.[7]

Under the facts of this case, allegations of competition are unnecessary because unlike in *HMA,* here the *violation* of HRS § 481B–4 established that the conduct, i.e., non-disclosure, was sufficient itself to constitute, i.e., be deemed, *both* an unfair and deceptive act or practice and unfair method of competition. In contrast, *HMA* did not involve conduct that the legislature had by statute deemed a per se UMOC. Rather, *HMA* allowed the plaintiffs to bring a UMOC action based on UDAP claims to demonstrate that anti-competitive conduct caused their injury. Hence, *HMA* is not determinative in this situation. Inasmuch as in the instant case a violation is *deemed* to be an unfair and deceptive act or practice and (or for the sake of argument, "or") an unfair method of competition, there is no requirement or need to distinguish between unfair methods of competition and unfair and deceptive acts that may also constitute unfair methods of competition.

Nevertheless, the majority maintains that the distinction between UDAP and UMOC claims is still relevant to the instant case because *HMA* stated that " 'the existence of the competition is what distinguishes a claim of unfair or deceptive acts or practices from a claim of unfair methods of competition.' " Majority opinion at 437, 228 P.3d at 317 n. 26 (quoting *HMA,* 113 Hawai'i at 112, 148 P.3d at 1214). Thus, according to the majority, the pleading requirement of *HMA* "is based on the differences in the nature of the underlying causes of action." *Id.* at 437, 228 P.3d at 317 n. 26. With all due respect, this view is taken wholly out of context.

7. Obviously, as indicated *supra,* Plaintiffs may

only bring a UMOC claim.

454

The circuit court in *HMA* had concluded that, although plaintiffs had brought their action as a UMOC, the claims were actually UDAP and, consequently, dismissed plaintiffs' action. *HMA,* 113 Hawai'i at 111, 148 P.3d at 1213. However, as noted before, this court vacated the dismissal, holding that "plaintiffs may bring claims of [UMOC] based on conduct that would *also* support claims of [UDAP]." *Id.* (emphasis added) (citation omitted). In other words, *HMA's* holding was that UDAP and UMOC could be treated the same, provided that plaintiffs bringing UMOC claims also pled the nature of the competition. Thus, contrary to the majority's argument, the pleading requirement interposed between UDAP and UMOC is not "based on differences in the nature of the underlying causes of action[,]" majority opinion at 437, 228 P.3d at 317 n. 26, but is necessitated in situations where they share a commonality.

Taken at face value, a difference "in nature" between UMOC and UDAP would have prevented this court from regarding the two causes of action under the facts in *HMA* as interchangeable. *HMA* expressly focused on whether UDAP claims could also be brought as UMOC claims. Therefore, the "nature of the competition" pleading requirement was to establish that *because* "a claim of unfair or deceptive acts or practices" *could constitute* "a claim of unfair methods of competition[,]" majority opinion at 437, 228 P.3d at 317 n. 26 (citing *HMA,* 113 Hawai'i at 112, 148 P.3d at 1214), it was necessary in such circumstances that the nature of the competition be alleged.

As previously discussed, *HMA* simply did not involve the deeming language in HRS § 481B–4. On its face and without qualification, HRS § 481B–4 states that violations of HRS § 481B–14 can be brought both as a UMOC and a UDAP. Thus, the "distinction" thought necessary in *HMA* is not presented in this case. As a result, there are no "differences in the underlying causes of action" upon which the majority can premise its "pleading requirement." Because it nevertheless does so, the majority disregards the straightforward text of HRS § 481B–4 and, consequently, gives no effect to the legisla-

tive mandate that a violation of HRS § 481B–14 is already "deemed" a violation of HRS § 480–2.

2.

The majority further relies on this court's decisions in *Ai v. Frank Huff Agency,* 61 Haw. 607, 607 P.2d 1304 (1980), and *Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Co.,* 91 Hawai'i 224, 982 P.2d 853 (1999). The majority states that the "deemed" in § 481B–14 indicates the legislature " 'predetermine[d]' that violations of HRS [c]hapter 481B would constitute per se unfair methods of competition for the purposes of § 480–2, and therefore a plaintiff *with standing* need not prove that conduct which violates HRS [chapter] 481B constitutes an unfair method of competition." Majority opinion at 440, 228 P.3d at 320 (citing *Ai,* 61 Haw. at 616, 607 P.2d at 1311) (emphasis added). The majority thus excludes from consideration what in fact is a "standing" factor, i.e., that the violation itself establishes the negative impact on competition. HRS § 481B–4. With all due respect, the majority arrives at its position by misconstruing this court's holding in *Ai* and concluding that "the legislature did *not* determine that an injury suffered by 'any person' as a result of a violation of chapter 481B necessarily stems from the negative effect on competition caused by the violation." Majority opinion at 440, 228 P.3d at 320 (emphasis in original). According to the majority, "the legislature was not making a determination that any person injured as a result of a violation of [c]hapter 481B automatically has standing to sue pursuant to HRS §[§] 480–2 and 480–13. Instead, a private person must separately allege the nature of the competition in accordance with this court's holding in *HMA*." *Id.* at 440, 228 P.3d at 320. Contrary to the majority's view, the holding in *Ai does* indeed support the conclusion of automatic standing and in that situation, *HMA* does *not* require a separate allegation regarding the nature of the competition. *See* discussion *supra.*

*Ai* involved the violation of HRS § 443–44(8) which "prohibit[ed] a collection agency from making any representation that an ex-

isting obligation of a debtor may be increased by the addition of attorney's fees when in fact such fees may not legally be added to the existing obligation of the debtor." 61 Haw. at 617, 607 P.2d at 1312. Furthermore, according to *Ai*, HRS § 443–47 established that HRS § 443–44(8) was a "per se" UMOC violation by stating that "[a] violation of this part by a collection agency *shall constitute* unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480–2." *Id.* at 615, 607 P.2d at 1310–11 (emphasis added). The debtor plaintiffs in *Ai* alleged a per se violation of HRS § 443–44(8), claiming that the promissory note plaintiffs executed and delivered to defendant contained an illegal provision that plaintiffs would pay attorney's fees at the rate of 33–1/3%—above the 25% chargeable under the law if a collection suit was filed. *Id.*

*Ai* stated that HRS " § 480–13 establishes four essential elements: (1) a violation of chapter 480; (2) injury to plaintiff's business or property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is in the public interest or that the defendant is a merchant." *Id.* at 617, 607 P.2d at 1311. *Ai* went on to decide that the plaintiffs had established a per se violation of the statute in that "[t]he representation that the [attorney fees] obligation of the debtor could be so increased was … in violation of § 443–44(8)." *Id.* at 618, 607 P.2d at 1312. However, *Ai* explained that, "[w]hile proof of a violation of chapter 480 is an essential element of an action under § 480–13, the mere existence of a violation is not sufficient *ipso facto* to support the action; forbidden acts cannot be relevant unless they cause private damage." *Id.* (citation omitted).

*Ai* concluded that injury under HRS § 480–13 required only a showing of economic loss. "*[I]t is unnecessary for plaintiffs to allege commercial or competitive injury in order for plaintiffs to have standing under HRS § 480–13; it is sufficient that plaintiffs allege that injury occurred to personal property* through a payment of money wrongfully induced." *Id.* at 614, 607 P.2d at 1310 (cita-

tion omitted) (emphasis added). Likewise, in the instant case, a similar showing of injury to personal property is all that is required under the same statute, HRS § 480–13. As noted before, Plaintiffs have sufficiently alleged that injury.

*Ai* further concluded that the fourth requirement inherent in HRS § 480–13, i.e., "a showing that the action is in the public interest[,]" had been satisfied because the plaintiffs had "supplied allegations adequate to show that such a per se violation of [§ ]480–2 ha[d] occurred." *Id.* at 617, 607 P.2d at 1311. Thus, under *Ai*, "the public interest ha[d] been sufficiently made out to confer standing to plaintiffs under [HRS § ]480–13." *Id.* at 617, 607 P.2d at 1311. The public interest requirement is directly analogous to the majority's requirement that Plaintiffs plead the "nature of competition" inasmuch as both are aimed at addressing the anti-competitive effects of such conduct. However, contrary to the majority's position, the fact that *Ai* concluded that those harmed by per se violations need not show that the action is in the public interest supports the conclusion that plaintiffs harmed by a per se UMOC violation need not allege the "nature of the competition."

The majority's attempt to rebut the analogy between the "public interest" requirement in *Ai* and the majority's requirement that the "nature of the competition" be pled is unpersuasive. The majority states that the public interest requirement was satisfied if a plaintiff pleads an effect on competition, or the UMOC "is being employed under circumstances which involve flagrant oppression of the weak by the strong." Majority opinion at 441, 228 P.3d at 321 (quoting *Ai*, 61 Haw. at 614, 607 P.2d at 1310). However, the majority maintains that the presence of a second method of satisfying the public interest requirement, i.e., that the unfair methods employed "involve a flagrant oppression of the weak by the strong," *id.*, undermines the analogy. But *Ai* expressly confirmed that the "public interest" was satisfied by showing a negative effect on competition. *Ai*, 61 Haw. at 614, 607 P.2d at 1310 ("To justify filing a complaint the public interest must be specific and substantial. Often it is so, be-

cause the unfair method employed threatens the existence of present or potential competition."). Indeed, the majority concedes that the "public interest" requirement *is* satisfied by alleging a negative effect on competition.

Consequently, that there is an *additional* means of satisfying the "public interest" in no way affects the analogy. In *Ai*, this court recognized that *either* a negative impact on competition or "flagrant oppression of the weak" would satisfy the "public interest" requirement. *Id.* at 614–15, 607 P.2d at 1310. In other words, the "nature of the competition" prong was encompassed by the "public interest" requirement. Inasmuch as the negative impact on competition described in *Ai* and encompassed in the public interest requirement is conceptually the *same* impact that the majority indicates must be pled in the instant case, the requirements are analogous.

However, in *Ai*, this court concluded that it did not need to determine whether there had been a negative impact on competition or "flagrant oppression of the weak" because there was a per se violation of the statute. *Id.* at 615, 607 P.2d at 1310–11. As *Ai* explained, HRS § 443–44(8) established a prohibition against adding interest on attorney's fees in contracts. In that connection, HRS § 443–47 stated that a violation of HRS § 443–44(8) "shall constitute" a UMOC or UDAP. Thus, *Ai* concluded that an allegation of a violation of HRS § 443–44(8) was sufficient to confer standing upon plaintiffs without any further showing of an effect on the "public interest" by means of a negative impact on competition or oppression of the weak. *Id.* Moreover, the analysis in *Ai* made clear that, similar to allegations of an negative impact on competition, a plaintiff *need not plead* "flagrant oppression of the weak by the strong" to have standing in cases where there was a per se UMOC violation. *Id.* at 614, 607 P.2d at 1310.

None of the cases the majority cites compels a different conclusion inasmuch as those cases do not involve per se UMOC violations. In *T.W. Electrical Service, Inc., v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 636 (1987), the court of appeals for the ninth circuit concluded that plaintiff-contractor's

UMOC claim under HRS § 480–2 against a defendant-trade association did not have merit because the defendant was not in competition with the plaintiff. The ninth circuit took note of the "flagrant oppression" prong as satisfying the "public interest" requirement, but did not apply that standard or in any way contradict this court's holding in *Ai*. In *Ailetcher v. Beneficial Finance Co. of Hawaii,* 2 Haw.App. 301, 306, 632 P.2d 1071, 1076 (1981), the ICA overturned the directed verdict against plaintiff-business owner who had alleged an unfair practice in violation of HRS § 480–2 against the defendant. The plaintiff had argued that defendant had ordered a halt on all financing transactions at his car dealership, resulting in harm and loss to plaintiff's business. *Id.* at 303–04, 632 P.2d at 1074. The ICA applied the "flagrant oppression" standard, concluding that the circuit court erred in granting a directed verdict for defendant because plaintiff had presented facts sufficient to support a jury verdict that defendant's acts amounted to a "flagrant oppression of the weak by the strong." *Id.* at 304–05, 632 P.2d at 1075. However, the ICA expressly distinguished its holding from *Ai* inasmuch as there was "no statutory violation involved in [that] case." *Id.* at 306, 632 P.2d at 1076. In other words, *Ailetcher* did not involve a per se violation of the statute like that in *Ai*.

The majority also cites *Federal Trade Commission v. Klesner,* 280 U.S. 19, 50 S.Ct. 1, 74 L.Ed. 138 (1929), which *Ai* cited for the proposition that the public interest was satisfied by a showing of a "flagrant oppression of the weak by the strong." *Id.* at 30, 50 S.Ct. 1. In *Klesner,* the United States Supreme Court concluded that the "flagrant oppression" standard did not apply to the facts before it. *Klesner* involved an action brought by the FTC against a business owner to enjoin him from using the name "shade shop" "as an identification of the business conducted by him" because that trade name belonged to another business. *Id.* at 22, 50 S.Ct. 1. The Supreme Court dismissed the FTC's action. Inasmuch as the case involved a purely private dispute between individuals with no discernable effect on competition, it did not satisfy the public interest require-

ment. *Id.* at 30, 50 S.Ct. 1. Additionally, *Klesner* did not involve "flagrant oppression of the weak by the strong" or any of the issues presented in the instant case. Thus, *Klesner* does not contradict *Ai's* holding that an injury to the public interest need not be alleged in per se violations of HRS § 480–2. As a result, the majority's citation to these cases is inapposite inasmuch as the cases are not inconsistent with the central holding of *Ai*, i.e., that a per se violation of the statute obviates the need to plead a negative impact on competition or oppressive conduct.

The majority's attempt to draw distinctions between effects on "public interest" and "competition" aside, the majority plainly contravenes this court's decision in *Ai* regarding per se UDAP and UMOC violations despite the presence of nearly identical provisions. Similar to the "deemed" language in HRS § 481B–4, the language in HRS § 443–47 at issue in *Ai* stated that "[a] violation of this part by a collection agency *shall constitute* unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480–2." *Ai*, 61 Haw. at 610 n. 5, 607 P.2d at 1308 n. 5 (emphasis added). In *Ai*, the plaintiffs thus established a per se violation of § HRS § 443–44(8), which the legislature had commanded "shall constitute" a violation of 480–2. *Id.* As noted before, a similar mandate for a violation of HRS § 481B–14 appears in the instant case under HRS § 481B–4. Consequently, as *Ai* concluded, "[s]ince plaintiffs herein have supplied allegations adequate to show that such a per se violation of § 480–2 has occurred, we accordingly find that the public interest has been sufficiently made out to confer standing to plaintiffs under § 480–13." *Id.* at 617, 607 P.2d at 1311. Likewise, Plaintiffs here have alleged, via HRS §§ 481B–14 and 481B–4, a "per se violation of HRS § 480–2 sufficient[ ] to confer standing to [P]laintiffs under [HRS] § 480–13." *Id.*

Based on the foregoing, the rationale in *Ai* applies to the instant case. Nonetheless, the majority construes the nearly identical language regarding per se violations to mean that a plaintiff does not need to prove that an act is a UMOC, but must still prove that the

UMOC causing plaintiff's injury negatively impacts "competition." If *Ai* had adopted the majority's construction of "shall constitute," then this court in *Ai* would have had to require that the plaintiffs additionally allege that the UMOC negatively impacted the "public interest." That obviously was not the case. Rather, *Ai* unequivocally held that an act that "constitutes" a UMOC violation was "*all the law require[d]*" to satisfy the "public interest" requirement. *Id.* at 615, 607 P.2d at 1310–11 (emphasis added). There is no basis for distinguishing the analysis and outcome in *Ai* from the instant case.

The less stringent requirement for alleging an injury in cases of per se UMOC violations in *Ai* also distinguishes this court's holding in *Robert's Hawaii*. *Robert's Hawaii* stated that the third requirement of HRS § 480–13, i.e., "proof of the amount of damages," *Ai*, 61 Haw. at 617, 607 P.2d at 1311, sets forth a different requirement than merely injury to "business or property." "Also known as the 'fact of damage' requirement, the antitrust plaintiff need not prove with particularity the full scope of profits that might have been earned. Instead, it requires a showing, with some particularity, of *actual damage caused by anticompetitive conduct that the antitrust laws were intended to prevent.*" *Robert's Hawaii*, 91 Hawai'i at 254 n. 31, 982 P.2d at 883 n. 31 (citation omitted) (emphasis added). However, as stated previously, the legislature has deemed the violation of HRS chapter 481B in the instant case to constitute a UMOC. Contrastingly, *Robert's Hawaii* did not involve a per se violation of the statute.

## C.

With respect to the third ground, the majority's statement that "the legislative history of HRS § 481B–4 does not reflect an intent to eliminate the causation requirement of HRS § 480–13(a)," majority opinion at 439, 228 P.3d at 319, incorrectly characterizes the importance of the legislature's findings. Similarly, the majority's statement that the legislative history does not reflect an intent "to eliminate the causation requirements of HRS § 480–13," *id.*, misconstrues the issue. As noted previously, the majority's rendering of "the causation requirement of HRS § 480–

13" includes proof that the Plaintiffs' injury stems from the anti-competitive effect of the UMOC. However, in enacting HRS § 481B–14, the legislature emphasized the importance of protecting employees, and through HRS § 481B–4, deemed the violation of the statute a UMOC. The plain language of HRS § 481B–14 evinces the legislature's rationale that if the entire service charge is not distributed to employees, customers should be notified that an additional gratuity would be necessary if their intent was to reward the employees serving them.

From its inception, HRS § 481B–14 related to a perceived injury to employees. Act 16, which became HRS § 481B–14, was entitled "A Bill for an Act *Relating to Wages and Tips of Employees.*" 2000 Haw. Sess. Laws Act 16, § 1 at 21 (emphasis added). "In construing an act, the title may be resorted to for the purpose of ascertaining the meaning of the act." *Spears v. Honda,* 51 Haw. 1, 16–17, 449 P.2d 130, 139 (1968). This court may also consider the title of a statute in determining the group of individuals primarily covered by the statute. *See Moyle v. Y & Y Hyup Shin, Corp.,* 118 Hawai'i 385, 412, 191 P.3d 1062, 1089 (2008) (Acoba, J., concurring) ("As to the purpose of the [Uniform Contribution Among Tortfeasors Act], which is also pertinent to the construction of its language, the title of the statute—the Uniform *Contribution Among Tortfeasors* Act—clearly indicates to whom it is applicable.") (Emphasis added.) (Citation omitted.) In that regard, the legislature stated that its reason for enacting HRS § 481B–14 was "to require hotels and restaurants that apply a service charge for food or beverage services, *not distributed to employees as tip income,* to advise customers that the service charge is being used to pay for costs or expenses *other than wages and tips of employees.*" 2000 Haw. Sess. Laws Act 16, § 1 at 22 (emphases added).

The majority's own discussion of the Committee on Commerce and Consumer Protection's findings emphasized that "moneys collected as a service charge are not always distributed to the employees as gratuities and are sometimes used to pay the employer's administrative costs." S. Stand. Comm.

Rep. No. 3077, in 2000 Senate Journal, at 1287. The majority notes that when employers withhold a portion of the service charge, *"the employee does not receive the money intended as a gratuity by the customer, and the customer is misled into believing that the employee has been rewarded for providing good service."* Majority opinion at 433, 228 P.3d at 313 (citing S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1286–87) (emphasis in original). But the result of the customers being misled was that they may "not leave additional *tips for service employees.*" H. Stand. Comm. Rep. No. 479–00, in 2000 House Journal, at 1155 (emphasis added). In other words, the deceptive act practiced on the customer resulted in an injury to the employee because the customer's misapprehension of how the employee was compensated meant that the employee was deprived of an intended gratuity. The legislative history does not evince a concern with an injury to a consumer's personal, family, or household purchases, or investment. *See* HRS § 480–1.

As the legislature explained, "the problem lies with consumers *who may not leave tips for the service employees,* mistakenly thinking that the service charges they paid were tips, *so they did not leave additional tips for service employees.*" H. Stand. Comm. Rep. No. 479–00, in 2000 House Journal, at 1155 (emphases added). In light of this history, it would be incongruous to assert, as the majority does, that in addition to alleging injury for an already per se violation of HRS § 480–2(e), Plaintiffs must also allege "actual damage caused by anticompetitive conduct." Majority opinion at 439, 228 P.3d at 319.

The majority further asserts that the legislature's placement of HRS § 481B–14 "within Hawaii's consumer protection statutes" does not indicate "that the legislature intended to eliminate the causation requirements," majority opinion at 440, 228 P.3d at 320, that Plaintiffs "allege how [Defendants'] conduct will negatively affect competition in order to recover an [UMOC] claim[,]" *id.* at 437–38, 228 P.3d at 317–18. As noted above, the legislature deemed a violation of HRS § 481B–14 a UMOC under HRS § 480–2, actionable under HRS § 480–13. The only

"causation" requirement necessary to satisfy HRS § 480–13 is that Plaintiffs' amended complaint allege facts sufficient to establish Defendants' liability under HRS § 481B–14. Plaintiffs have satisfied the necessary causation requirement because they have alleged a causal connection between their injury and the violation of HRS § 481B–14. The majority's additional requirement that Plaintiffs allege that their injury stems from the anti-competitive effect of the UMOC is not present in the plain language of HRS §§ 480–13 or 481B–4 and not expressed in the legislative history.

### D.

With respect to the fourth ground, the majority relies on federal court interpretations of federal statutes. The majority notes that, although HRS § 480–2 is based on Section 5 of the FTCA, the difference between the two statutes is that the former contains a private right of action, whereas the latter vests enforcement with the FTC. Majority opinion at 443, 228 P.3d at 323 (citing *HMA*, 113 Hawai'i at 109, 148 P.3d at 1211). Thus, according to the majority, "federal interpretations of the FTCA, although helpful in determining whether a defendant's actions constitute [a UDAP] or [a UMOC], are of limited relevance in interpreting the standing requirements applicable to the private right of action provided by HRS § 480–2(e)." *Id.* at 444, 228 P.3d at 324. The majority also points out that HRS § 480–13 is derived from section 4 of the Clayton Act, which states that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor[.]" 15 U.S.C. § 15(a). The majority argues that, as a result, this court must follow federal case law requiring plaintiffs show "antitrust injury," "which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) (citing *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)).

According to the majority, "[t]he antitrust requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of defendant's behavior." Majority opinion at 445, 228 P.3d at 325 (citing *Atlantic Richfield*, 495 U.S. at 344, 110 S.Ct. 1884) (emphasis in original). However, as discussed previously, the "deemed" provision of HRS § 481B–14 obviates the need for Plaintiffs to allege a "competition reducing" effect inasmuch as such behavior is deemed to be anti-competitive. When an act is deemed to constitute a UMOC, the plaintiff is left to allege an injury that stems directly from that UMOC and damages. Thus, requiring that Plaintiffs demonstrate their injury stems from the anti-competitive effect of HRS § 481B–14 renders the term "deemed" in HRS § 481B–4 superfluous. Furthermore, as noted before, the legislative history of 481B–14 demonstrates that the legislature was not simply concerned with the anti-competitive effect of the conduct on consumers and businesses; but, rather, took into account the direct effect of *such conduct on employees*. See S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1286–87. As such, the federal requirement that plaintiffs demonstrate an antitrust injury even in cases of per se violations is not controlling.

Additionally, as the majority recognizes, "*Atlantic Richfield* involved a judicially recognized per se antitrust violation, whereas the per se violation of Hawai'i antitrust law in this case is established by HRS § 481B–14." Majority opinion at 445, 228 P.3d at 325 n. 35. However, the majority is incorrect in asserting that "this distinction has no bearing on the underlying analysis for the antitrust injury requirement in the circumstances here[.]" *Id.* Inasmuch as the legislative intent evinces concerns for economic injury to employees, this court must give due consideration to those concerns, especially since federal precedent does not contain any analogous provision to HRS § 481B–4 and 481B–14 or reflect the same concerns. The absence in federal case law and statutes of the considerations that motivated the legislature in enacting HRS § 481B–14 is manifest grounds for distinguishing such case law from the instant case.

### E.

Finally, under our pleading rules anti-competitive conduct is readily apparent on the face of the amended complaint.[8] As Plaintiffs state:

Indeed, *it is obvious* that if one hotel obeys the laws and remits the entire service charge to the employees serving at the banquet and another hotel/competitor skims the service charge and keeps 4–5% for itself without disclosure, the hotel acting unlawfully can undercut its stated price for the banquet knowing that it will be receiving improper gains from the misleading description of its service charge. *This is clearly a form of unfair competition.*

(Emphases added.) Thus, not only is the majority's additional pleading requirement wrong in light of HRS § 481B–4, it contravenes this court's notice pleading case law concerning liberal construction of pleadings. *See Henderson v. Prof'l Coatings Corp.*, 72 Haw. 387, 399, 819 P.2d 84, 92 (1991) ("Pleadings should not be construed technically when determining what the pleader is attempting to set forth but should be construed liberally so as to do substantial justice.") (Citation omitted.); *Perry v. Planning Comm'n*, 62 Haw. 666, 685, 619 P.2d 95, 108 (1980) ("Modern judicial pleading has been characterized as 'simplified notice pleading.' Its function is to give opposing parties 'fair notice of what the ... claim is and the grounds upon which it rests.'" (Quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).)).

Furthermore, the majority's suggestion that an effect on competition is not related by the amended complaint is incorrect inasmuch as illegal competition may reasonably be inferred from the facts and the claims alleged. *See supra* note 8. Defendants facing allegations that they have engaged in methods of competition that are unfair, as described in the amended complaint, are, by dint of the allegations, given sufficient notice of the nature of the competition affected. Courts construing such allegations are required to view them in the light most favorable to the plaintiff. *See Jou v. Dai–Tokyo Royal State Ins. Co.*, 116 Hawai'i 159, 164, 172 P.3d 471, 476 (2007) ("We must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative

---

8. Plaintiffs' amended complaint reiterated in pertinent part, states as follows:

**I. *INTRODUCTION***
... As set forth below, the [D]efendants have imposed a service charge on the sale of certain food and beverage ... *but have failed to distribute the total proceeds of the service charge to these employees as tip income,* as required by Hawaii law. *This conduct violates [HRS § ]481B–14 and is actionable under [§§ ]481B–4, 480–2, and 480–13* ....
....
**III. *PARTIES***
....
2. ... This class is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and [HRS § ]480–13....
....
**IV. *FACTS***
4. For banquets, events, meetings and in other instances, the [D]efendants add a preset service charge to customers' bills for food and beverage provided at the hotels.
5. However, the [D]efendants do not remit the total proceeds of the service charge as tip income to the employees who serve the food and beverages.
6. Instead, the [D]efendants have a policy and practice of retaining for themselves a portion of these service charges (or using it to pay managers or other non-tipped employees who do not serve food and beverages).
7. The [D]efendants do not disclose to the hotel's customers that the service charges are not remitted in full to the employees who serve the food and beverages.
....
**V. *CLASS ACTION ALLEGATIONS***
9. This section is properly maintainable as a class action pursuant to [HRS § ]480–13 and Rule 23 of the Federal Rules of Civil Procedure....
....

**COUNT I**

*([HRS §§ ]481B–14, 481B–4, and 480–2 )*

*The action of the [D]efendants as set forth above are in violation of [HRS § ]481B–14. Pursuant to Section 481B–4, such violation constitutes an unfair method of competition or unfair and deceptive act or practice within the meaning of Section 480–2. Section 480–2(e) permits an action based on such unfair methods of competition to be brought in the appropriate court, and a class action for such violation is permitted and authorized by Section 480–13 and Rule 23 of the Federal Rules of Civil Procedure.*
(Boldfaced font in original.) (Emphases added.)

theory." (Quoting *In re Estate of Rogers*, 103 Hawai'i 275, 280–81, 81 P.3d 1190, 1195–96 (2003).)). As noted before, dismissal is appropriate only when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." *Rogers*, 103 Hawai'i at 280, 81 P.3d at 1195 (citations omitted). Viewing the amended complaint in the light most favorable to the Plaintiffs, it cannot reasonably be concluded that under the amended complaint Plaintiffs will be unable to "*prove* no set of facts," *id.* (emphasis added), i.e., a causal connection between the injury plaintiffs suffered and the UMOC, as their case progresses. Hence, requiring Plaintiffs to allege more is also inconsistent with this court's jurisprudence.

### V.

Tracing the statutory language relevant to an action based on UMOC, Plaintiffs have set forth facts in their amended complaint sufficient to sustain their action against Defendants and are not required to allege the nature of the competition. Therefore, answering the certified question in the affirmative, I would hold that Plaintiffs' amended complaint should not be dismissed and that Defendants' motion to dismiss should be denied.